## KEENEY v. DOMINION COAL CO.

(District Court, S. D. Ohio, W. D. January 26, 1915.)

No. 6791.

1. TAXATION ⬤124½—FRANCHISE TAX—LIABILITY OF RECEIVER—STATUTES.

Under Page & A. Gen. Code Ohio, §§ 5495–5521, imposing an annual franchise tax on corporations, and requiring a report of the kind of business in which a corporation is engaged and its place of business, and imposing a penalty for neglect to make such reports, and by section 5506 thereof, providing that the taxes and penalties should be a first lien on all property of the corporation, whether employed in its business or in the hands of a receiver for the benefit of creditors, the receiver of an insolvent corporation is not required to make a report or to do any of the things which the statute requires a corporation "doing business" to do, nor is the tax imposed on him, since the taxes and penalties are payable only by a corporation "doing business."

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 224–226, 240–242, 260–263, 272; Dec. Dig. ⬤124½.]

2. CORPORATIONS ⬤560—RECEIVERSHIP—DUTIES AND LIABILITIES.

The assets of an insolvent corporation in the hands of its receiver do not belong to it, but to its creditors, and are in the hands of the court for distribution to creditors, and are impressed with a trust in the hands of the receiver, to be administered by a court of equity for the benefit of creditors who are, in equity, its owners.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2253–2260, 2262; Dec. Dig. ⬤560.]

3. CONSTITUTIONAL LAW ⬤283—TAXATION ⬤113—DUE PROCESS OF LAW—CORPORATION FRANCHISE TAX—LIABILITY OF RECEIVER.

Under Page & A. Gen. Code Ohio, §§ 5495–5521, imposing an annual franchise tax on corporations, such tax is not collectible against the assets of an insolvent corporation in the hands of its receiver in trust for the payment of creditors, since that would take from the creditors what belongs to them, in violation of due process of law.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 891, 892, 904–906; Dec. Dig. ⬤283; Taxation, Cent. Dig. § 207; Dec. Dig. ⬤113.]

4. TAXATION ⬤113—FRANCHISE TAX—CONSTITUTIONAL PROVISIONS.

Under Page & A. Gen. Code Ohio, §§ 5495–5521, imposing an annual franchise tax on corporations, such tax is not collectible against the receiver of an insolvent corporation holding its assets for the benefit of creditors, when its franchise to be a corporation and conduct its authorized business as such are of no value to the receiver or to creditors, since its collection would violate Bill of Rights, § 19, declaring that private property shall be held inviolate, but subservient to the public welfare, as being confiscatory and oppressive.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 207; Dec. Dig. ⬤113.]

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

225 F.—40

5. TAXATION ⬤⟿124½—FRANCHISE TAX—ENFORCEMENT—ESTOPPEL.
    Under Page & A. Gen. Code Ohio, §§ 5495–5521, imposing an annual
franchise tax on corporations, section 5509 of which provides that a cor-
poration's failure to make a return as to its business or to pay such tax
for 90 days after the time allowed therefor shall be certified to the Sec-
retary of State, who shall thereupon cancel its articles of incorporation
and notify the corporation of his action, the failure of the Secretary of
State to cancel the articles of incorporation of a corporation in default
so as to prevent the corporation from ceasing to exist as such estopped
the state from proceeding to require the receiver of such corporation,
during its insolvency, to pay the tax accumulated during his possession.
    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 224–226, 240–
242, 260–263, 272; Dec. Dig. ⬤⟿124½.]

Bill by George H. Keeney against the Dominion Coal Company, a
corporation under the laws of Ohio, insolvent, in which a receiver was
appointed, and in which the State of Ohio intervened to charge the
fund in the hands of the receiver with a franchise tax. Intervener's
claim denied.

John A. Deasy, of Cincinnati, Ohio, for State of Ohio.
Aaron A. Ferris, of Cincinnati, Ohio, for receiver.

HOLLISTER, District Judge. This action is in equity for the ap-
pointment of a receiver and other relief. The bill was filed November
8, 1911, and a receiver was appointed the same day. The corporation
was insolvent. The assets applicable to the payment of the claims of
general creditors are, even with the addition of the sums collected by
the receiver on unpaid subscriptions to capital stock, sufficient to pay
only a small percentage of the debts.

By intervention, the state of Ohio seeks to charge the fund in the
hands of the receiver arising from the conversion of the assets of the
corporation into money, with the excise or franchise tax imposed by an
act of the Legislature of Ohio, known as the "Willis Law," originally
entitled, "An act to require corporations to file annual reports with the
Secretary of State and to pay annual fees therefor," and now found
under sections 5495 to 5521 of the General Code of Ohio. The assets
of the corporation are still in process of administration by this court.

It is admitted by the receiver that the tax for 1911 was payable by
the corporation before his appointment, and that the state is entitled to
recover the tax for that year, although not in the amount of the state's
claim that the statutory percentage of three-twentieths of one per cent.
applies to the authorized capital stock; the receiver's contention being
that the percentage should be figured on only the amount of the capital
stock paid in.

The substantial controversy arises upon the denial of the receiver of
the right of the state to impose the tax for the years 1912 and 1913
and indefinitely thereafter, upon him as receiver, or upon the insol-
vent corporation's assets in his hands for distribution to creditors.

It would serve no useful purpose to set out at length the several
sections of the act, but, generally, it may be said to impose a franchise
tax and, as a basis for its imposition, the duty upon corporations for
profit to report to the tax commission of Ohio a sworn statement by

a designated officer of the corporation, containing certain information, including (section 5497, par. 7) "The nature and kind of business in which the corporation is engaged and its place or places of business." If the corporation fails or neglects to make the required report, a penalty of $10 for each day's omission is inflicted upon it.

In my judgment the claim of the state is untenable on several grounds:

[1] 1. The tax is not imposed on a receiver, nor is any duty required of him to make reports or do any of the things which in turn the statute requires the corporation "doing business" to do. The only reference to a receiver is found in section 5506, which provides:

"The fees, taxes and penalties, required to be paid by this act, shall be the first and best lien on all property of the public utility or corporation, whether such property is employed by the public utility or corporation in the prosecution of its business or is in the hands of an assignee, trustee or receiver for the benefit of the creditors and stockholders thereof."

Experience shows that when a corporation is hopelessly insolvent, as is this corporation, and goes into the hands of a receiver, its business ceases, and, practically at least, the active duties of the corporation itself, and of the officers through which it acts, come to an end. All that is left is a name and a naked right to be a corporation for the purpose of engaging in the business its charter authorizes it to do. As a corporation, it may be said to be in existence, since none of the steps authorized by the laws of Ohio to dissolve it or wind it up have been taken, and it has not been declared a bankrupt under the bankruptcy act; but its assets and its business are no longer of any value to it. Its right to be a corporation to do an authorized business is no longer worth anything to it, its stockholders, or its creditors. Its assets are in the custody of a court of equity to be distributed to its creditors.

The state cannot compel the receiver to make reports. The penalties for failure to make them are not inflicted upon him. If the corporation must continue to make reports and, on failure, be subjected to penalty, then, if the receiver must pay this tax, he must also pay the penalty; but a penalty of this character could surely not be collected from a receiver if it were not imposed.

These considerations suggest another reason why the state cannot maintain its claim:

2. The Legislature of Ohio did not intend the receiver to pay the "fees, taxes, and penalties," because section 5506 refers to fees, taxes, and penalties required to be paid only by the corporation doing business, and the purpose of this section is to fix a lien for the payment of the tax by the corporation required to pay it, upon the property employed in the prosecution of its business or in the hands of a receiver, if the property has gone into the custody of a court of equity through its receiver. Hence it is that the receiver in this case recognizes the lien of the state upon the assets in his hands for the tax of 1911, imposed upon the corporation when it was doing business. Section 5506 must be construed with the other sections in order to ascertain the purpose of the act, which requires the payment of a tax by the corporation for the privilege of doing business as a corporation. The construction con-

tended for by the state results in the absurdity of imposing a tax when the reasons for the tax and its only justification no longer exist. On the other hand, the reconcilement of section 5506 with the other sections, which the court is bound to effect if possible, brings about a result not only quite reasonable and just, but also in consonance with the clear intention of the Legislature to impose a tax upon the right granted by the state to be a corporation and to continue to do business as such.

[2] 3. The Constitution of the United States forbids the collection of this tax under the circumstances of this case. The assets in the receiver's hands do not belong to the corporation. They belong to the creditors. Its assets are in the hands of the court for distribution to creditors as their respective interests may appear. The assets have become impressed, even by a narrow application of the so-called "trust-fund" doctrine, with a trust in the hands of a receiver to be administered by a court of equity for the benefit of the creditors who are, in equity, its owners. It will be sufficient to refer to the language of Mr. Justice Bradley in Graham v. Railroad Co., 102 U. S. 148, 161, 26 L. Ed. 106, that:

"When a corporation becomes insolvent, it is so far civilly dead, that its property may be administered as a trust-fund for the benefit of its stockholders and creditors. A court of equity, at the instance of the proper parties, will then make those funds trust-funds, which, in other circumstances, are as much the absolute property of the corporation, as any man's property is his."

Referring to this case, Mr. Justice Brewer says, in Hollins v. Brierfield Coal & Iron Co., 150 U. S. 371, 383, 14 Sup. Ct. 127, 129, 37 L. Ed. 1113:

"All that it decides is, that when a court of equity does take into its possession the assets of an insolvent corporation, it will administer them on the theory that they in equity belong to the creditors and stockholders rather than to the corporation itself."

[3] If then these assets belong to the creditors of the corporation and the tax is imposed on the corporation itself, it is clear enough that its collection would take from the creditors that which belongs to them. This is not "due process of law." It may be sufficient to refer to what is said on this subject by Mr. Justice Brown in Holden v. Hardy, 169 U. S. 366, 390, 18 Sup. Ct. 383, 387, 42 L. Ed. 780:

"Recognizing the difficulty in defining, with exactness, the phrase 'due process of law,' it is certain that these words imply a conformity with natural and inherent principles of justice, and forbid that one man's property, or right to property, shall be taken for the benefit of another, or for the benefit of the State, without compensation; * * *."

See, also, Mr. Justice Field's definition in Hagar v. Reclamation District, 111 U. S. 701, 708, 4 Sup. Ct. 663, 28 L. Ed. 569.

[4] 4. The act as sought to be applied to the facts in this case is contrary to the Constitution of the state of Ohio. The Supreme Court of Ohio, in construing section 19 of the Bill of Rights with section 1 of article 2 of the Constitution, sections 1, 2, and 3 of article 12, and section 4 of article 13, shows that the power of taxation of privileges and franchises is limited "to the reasonable value of the privilege or fran-

chise conferred originally, or to its continued value from year to year." Southern Gum Co. v. Laylin, 66 Ohio St. 578, 593, 594, 64 N. E. 564, 566. In the opinion in that case, Judge Burket says:

"These limitations prevent confiscation and oppression under the guise of taxation, and the power of such taxation cannot extend beyond what is for the common or public welfare, and the equal protection and benefit of the people; but the ascertaining and fixing of such values rests largely in the General Assembly, but finally in the courts."

The situation would be different if the imposition of the tax merely resulted in a hardship to a financially weak corporation carrying on its business. Such a situation might not call for the intervention of a court, if the Legislature, having the power to impose such tax, did not exclude from its operation such corporations. In such case the appeal should be to the Legislature. And so the Supreme Court of the United States, in Ohio Tax Cases, 232 U. S. 576, 589, 34 Sup. Ct. 372, 375, 58 L. Ed. 737, discussing Southern Gum Co. v. Laylin, say, with respect to the decision in that case:

"* * * It was not intended to hold that the courts as final arbiters might overthrow a law imposing a tax on privileges and franchises merely because in isolated cases such law might impose a hardship, but only that those excise laws whose general operation is confiscatory and oppressive are unconstitutional."

Inasmuch as the franchise of the Dominion Coal Company to be a corporation and to conduct its authorized business as such is of no value to the receiver and to the creditors whose property he holds and whom he represents, the language of the Supreme Court of Ohio in Southern Gum Co. v. Laylin, and of the Supreme Court of the United States in construing the decision in that case, directly apply; for the imposition of this tax upon this receiver takes property without giving anything in return, the receiver and creditors not being interested in the franchise. The franchise tax on such a receiver as this is, in its operation, confiscatory and oppressive, and hence unconstitutional.

[5] 5. The state itself, through its officers, is to blame for the accumulation of this tax while the receiver is in possession. It is claimed by the state that until the corporation is dissolved, wound up, or brought to an end through proceedings authorized by the laws of Ohio, this tax may be imposed annually upon property in the hands of a receiver and collected from him even though all the assets in his hands might, in the course of time, be appropriated to the discharge of the tax against the corporation. This is, to me, a strange claim in the light of that part of the Willis law found in section 5509. That section provides that:

If the corporation "fails or neglects to make any such report or return or to pay any such tax or fee for ninety days after the time prescribed in this act for making such report or return or for paying such tax or fee, the commission shall certify such fact to the secretary of state. The secretary of state shall thereupon cancel the articles of incorporation of any such corporation which is organized under the laws of this state, by appropriate entry upon the margin of the record thereof. * * * Thereupon all the powers, privileges and franchises conferred upon such corporations, by such articles of incorporation or by such certificate of authority, shall cease and de-

termine. The secretary of state shall immediately notify such domestic or foreign corporation of the action taken by him."

When this corporation was in default for 90 days in the payment of the tax for 1911, it was the mandatory duty of the Secretary of State to cancel the articles of incorporation and to notify the corporation. Thereupon all of its franchises would come to an end and the tax could no longer be imposed. The state of Ohio seeks to collect a tax which, if the Secretary of State had done his duty, would not, and could not, have been imposed. Of course, the officers of an insolvent corporation such as this would not be likely to institute proceedings to wind up the corporation under appropriate laws to that end, nor have the creditors and receiver any way of compelling them to do so, or of themselves putting an end to the corporation.

The result is that the Secretary of State in withholding his cancellation can, and in this case did, prevent the corporation from ceasing to exist. This neglect of duty by a representative of the state permits the state, through another representative, to claim that the corporation is still in existence and its receiver liable annually to the tax, even though by its imposition and collection all of the assets might eventually be appropriated by the state, in which event, of course, the creditors would get nothing. There is surely something wrong about this. Whether or not, under principles of estoppel as that subject is dealt with in equity jurisprudence, the state ought not be permitted to recover, may be a doubtful question. But under the principle (of frequent application both in courts of law and in equity) that no one shall be permitted to take advantage of his own wrong, and under that other principle requiring of him who seeks equity right conduct relating to the subject-matter, it seems clear that the state is not in a position to require the receiver to pay this tax.

An appropriate order may be taken.