STATE OF DELAWARE,

*vs.*

SURETY CORPORATION OF AMERICA, a corporation of the State of Delaware.

*New Castle, July 25, 1932.*

*William H. Foulk,* Deputy Attorney General, for the State.

*William H. Foulk,* for claimant Beneficial Loan Society.

*Caleb S. Layton,* of the firm of Richards, Layton & Finger, for receiver, the exceptant.

THE CHANCELLOR:

### CLAIM OF STATE OF DELAWARE.

The order appointing the receiver conferred no power on him to operate the business. The Insurance Commissioner, prior to the filing of the bill, had refused to renew the defendant's certificate of authority to do business. The court is authorized by *Section* 573 of the *Code* "in a proper case made * * * to appoint a receiver to take charge of, settle and close up the affairs of said Company under the direction of the said Court, to enjoin it from doing business, and to make such order and decree as may be necessary or proper."

It is not contended that the appointment of the receiver operated to terminate the corporation's existence. Where a receiver is appointed under the general insolvency statute (*Section* 3883, *Revised Code* 1915), it is well settled that the continuity of the corporation's life is in no wise interrupted. *Du Pont v. Standard Arms Co.,* 9 *Del. Ch.* 315, 81 *A.* 1089; *Badenhausen Co. v. Kidwell,* 12 *Del. Ch.* 370, 107

*A.* 297; *Jones v. Maxwell Motor Co.*, 13 *Del. Ch.* 76, 115 *A.* 312. And similarly when a receiver is appointed under the sections of the Code under which this suit was inaugurated, the appointment does not dissolve the corporation.

The question which the pending exception raises is whether or not the annual franchise tax is assessable and payable for the year or years ensuing after a receiver has been appointed for the corporation, and the activities of the receiver are in fact simply those that are incidental to a liquidation of the assets and a distribution to creditors and stockholders.

In the recent case of *Michigan v. Michigan Trust Co.,* decided by the Supreme Court of the United States on May 16, 1932 (286 *U. S.* 334, 52 *S. Ct.* 512, 515, 76 *L. Ed.* 1136), Mr. Justice Cardozo, speaking for the court, observed that much subtlety of argument had been expended by the state and federal courts upon the sort of question which the pending exception presents. Reference to his opinion will disclose the distinctions which the cases have drawn. These distinctions have to do first with the nature of the tax, whether it is a tax imposed on the privilege of the corporation "to be," or a tax on the privilege "to do," which latter, so long as the corporate life exists, is closely assimilable to the privilege of the corporation "to be," unless, as some courts have held, the wording of the privilege "to do" is to be construed as contemplating the actual doing of business by the corporation. The distinctions further concern themselves with whether the receiver's activities were such as to warrant the view that he was acting exclusively as an agent of the court in administering an estate in trust for creditors and stockholders entirely independently of the corporate creature's existence, or whether, on the other hand, though an arm of the court, he was in the exercise also of the corporate franchise for which the tax is payable; and this distinction further runs into another one which is drawn between so-called primary and secondary franchises.

The franchise tax law under which the taxes in ques-

tion were assessed, in *Section* 65 (*Revised Code* 1915, § 102), as amended (36 *Del. Laws, c.* 6, § 1), provides that an annual tax shall be paid "for the use of the State, by way of license for the corporate franchise as hereinafter mentioned." It is a debt due the State. The statute elsewhere expressly so provides.

It does not seem necessary, in view of the language of the statute, to indulge in any discussion in order to support the statement that the tax is one that is imposed on the corporation for the privilege of existing. The mere retention by the corporation of its charter creates the obligation to pay the tax, irrespective of whether or not the corporation is in the active conduct of the business which it was created to carry on. *People of State of New York v. Jersawit*, 263 *U. S.* 493, 44 *S. Ct.* 167, 68 *L. Ed.* 405. This being the nature of the tax, the cases of *United States v. Whitridge, Receiver*, 231 *U. S.* 144, 34 *S. Ct.* 24, 58 *L. Ed.* 159, and *Keeney v. Dominion Coal Co.*, (*D. C.*) 225 *F.* 625, cited by the solicitor for the receiver, are distinguishable, for in those cases the court construed the statute involved as meaning to impose the tax on the doing of business by the corporation, and consequently held that as the business done by the receiver was not done by the corporation, the tax was not payable by the receiver.

The tax, then, being of the nature it is, can the estate in the hands of the receiver be held liable to pay it when the year or years for which it is assessed ensued after the receiver's appointment and during the period of liquidation of the estate, and when the receiver was not engaged in and the corporation was under injunction against, conducting or operating the business? That is the question.

It is undenied, indeed it is admitted, that the corporation itself is liable for the tax. But in this particular case if the liability for the tax debt is collectible from the corporation only, it will never be collected because the receivership has ousted the corporation from all of its assets and looks to a distribution of them among creditors and stockholders.

When it comes to ascertaining who the creditors are, the receiver says that the State is not to be included among them except for taxes that had accrued prior to the date of his appointment, that the assets on that date became a trust fund for the benefit of creditors and stockholders, citing *Mackenzie Oil Co. v. Omar Oil & Gas Co.,* 14 *Del. Ch.* 36, 120 *A.* 852, and that the class of creditors for whose benefit the trust is to be administered was rigidly fixed as of the date of the appointment. Hence, the receiver contends, the State, in so far as taxes subsequently accruing are concerned, is not in the class of creditors.

In *Michigan v. Michigan Trust Co., supra,* in which it was contended that the franchise tax assessed after a receiver had been appointed was collectible only from the corporation and not. from the receiver, the court after observing that such a contention would subordinate the State to all other creditors proceeded to say: "We find no warrant for the discrimination either in the provisions of any statute or in any principle of equity governing the distribution of a fund in the hands of a receiver. On the contrary, statute and doctrine point the other way." I am aware that the case in which this language was used was one in which at the outset the receivership was a conservation one and it was believed the company was a solvent concern, and that it did not turn into a liquidation receivership until after the tax liability had arisen. In this material respect therefore the case is distinguishable from the one *sub judice.* But reading the opinion of the Supreme Court in its entirety, I think it indicates that if the receivership had been a liquidating one from the beginning the conclusion of the court would still have been that the tax was payable out of the corporation's assets in the hands of the receiver.

Where the question has been directly presented of whether in a purely liquidating receivership franchise taxes assessed by the State upon a corporation for its privilege to exist are payable out of the estate in the hands of the

receiver, notwithstanding such taxes have accrued since the date of his appointment, and notwithstanding the corporate franchise was of no value to the receiver and that he had never in fact made any use of it, the weight of authority supports the claim of the State to be paid. *In re United States Car Co.*, 60 *N. J. Eq.* 514, 43 *A.* 673, 674; *People of State of New York v. Hopkins*, (*C. C. A.*) 18 *F.* (*2d*) 731; *Conklin v. U. S. Shipbuilding Co.*, (*C. C.*) 148 *F.* 129; *Duryea v. American, etc., Co.*, (*C. C.*) 133 *F.* 329; *State v. Bradley*, 207 *Ala.* 677, 93 *So.* 595, 26 *A. L. R.* 421.

When the corporation was granted its charter, it contracted with the State that it would pay an annual sum for the privilege of existing. I cannot see why the fact that a receiver has been appointed should operate to cancel the executory provisions of the contract as to payment, the existence continuing. Even if the receiver had power to elect to repudiate the contract, which he had not, why would not the assets in his hands be liable to answer in damages to the State?

The receiver relies upon the reasoning found in *Crews v. U. S. Car Co.*, 57 *N. J. Eq.* 357, 42 *A.* 272, and *Michigan Trust Co. v. Michigan*, (*C. C. A.*) 52 *F.* (*2d*) 842. Both of those cases however were overruled on appeal, the former by *In re U. S. Car Co., supra*, and the latter by *Michigan v. Michigan Trust Co., supra*. Notwithstanding the overruling of those cases, the solicitor for the receiver nevertheless insists that their reasoning is convincing and that this court should follow it. This I am not inclined to do. The fundamental consideration from which those cases start their reasoning is that in a liquidation receivership the assets are administered without the use or employment in any way by the receiver of the corporation's franchise "to be" and that the whole operation of the receivership is for the purpose of reducing the assets to cash and distributing the same to the persons who are the beneficial participants therein as a trust fund, viz., creditors existing at the time the receiver is appointed and then to stockholders. A

creditor such as the State whose claim is a running one under the terms of an executed statutory contract, is not regarded by those overruled cases as a creditor in so far as subsequently accruing charges are concerned. Yet those cases, in deference I say it, appear to me to contain within themselves a refutation of the fundamental doctrine they announce, for they both hold that if all other creditors are paid in full, the State will then be recognized as a creditor and paid its claim for franchise taxes accrued since the receivership, before the stockholders may be permitted to receive anything. Now it occurs to me that if the appointment of a receiver has the effect of calling into life a trust fund which is to be administered independently of all thought of the corporate existence, a new thing of purely equitable origin, whereby rights are recognized as fixed in favor of classes existing as of the time the trust is impressed upon the assets, viz., when the receiver is appointed, that conception should be followed through to its logical end. And yet as I have just pointed out, the two cases in the lower courts which accept that conception, adhere to it fully as regards one class of beneficiaries, viz., the creditors whose claims against the corporation had matured at the time of the appointment, but when the other class is dealt with, viz., stockholders, there is a rejection of that conception and debts of creditors against the corporation are recognized which accrued against it during the receivership, for the stockholders are in the end postponed by those cases to the current claims of the State. What the stockholders receive is no less an equitable participation in the fund than what the creditors receive, and their rights as participants in the equitably created trust *qua* such are as unrelated to the continued existence of the corporation as are the rights of the creditors. What they are paid by the receiver, is paid to them not through any continued functioning of the corporation, but is paid by the receiver in his office of an agent of the court having in hand a fund for administering. In this respect they are similarly cir-

cumstanced to the creditors and there appears to me to be an inconsistency in treating them differently as against a common rival.

My conclusion is that there is no justification for disregarding the State as a creditor notwithstanding its claim is for franchise taxes that accrued after the receiver was appointed. The Court of Errors and Appeals of New Jersey in *In re U. S. Car Co., supra,* expressed the correct view in my opinion when it said:

"\* \* \* Although the statute designates an imposition of this kind as a license fee or franchise tax, it plainly is not a tax upon corporate franchises. In fact, it is not, strictly speaking, a tax at all, nor has it the elements of one. It is in reality an arbitrary imposition laid upon the corporation, without regard to the value of its property or of its franchises, and without regard to whether it exercises the latter or not, solely as a condition of its continued existence. The state, in creating a corporation, has the right to impose upon its creature such conditions as the legislature, within constitutional limits, may deem proper; and the acceptance by the corporation of the franchises, powers, and privileges conferred upon it binds it to the performance of those conditions, so long as it continues to remain in possession of those franchises, powers, and privileges, and the conditions themselves remain unrevoked by the legislature. And this is so without regard to the solvency or insolvency of the corporation, the value or want of value of its franchises, or whether or not it is exercising them, either by its officers and directors, or through a receiver. The sole test, in determining its liability to comply with those conditions, so long as they remain unrevoked, is the existence or nonexistence of the corporation.

"Applying this test, it is quite clear that the so-called tax was properly imposed in the present case. At the time of its imposition, although the company had been decreed to be insolvent, no decree of dissolution had been pronounced against it; but, on the contrary, its corporate life was continued for the benefit of its creditors pending the final distribution of its assets."

Not infrequently, it may be added, in the course of administration of a receivership estate, the corporation is ordered by the court to take some corporate action, especially when it is desired to fortify titles passed by a receiver. Thus the fact that the corporate franchise "to be"

is still being enjoyed by the corporation is a thing at least of continuing potential value, though it may not be actually availed of, to the creditors and stockholders for whose benefit the receivership administration is being conducted.

Having determined that the tax is payable notwithstanding the years for which it is due followed after the receiver was appointed, the next question raised by the receiver is whether it is collectible for more than two years. I think it is not, because of that provision of the law (*Revised Code* 1915, § 111, as amended by 36 *Del. Laws, c.* 6, § 10) which provides that if any corporation subject to the general act "shall for two consecutive years neglect or refuse to pay the State any franchise tax or taxes, which has or have been, or shall be assessed against it, or which it is required to pay under the provisions of this Article, the charter of such corporation shall be void, and all powers conferred by law upon such corporation are declared inoperative" (unless an extension of time is granted formally by the Governor and now by the State Tax Board).

The receiver made application for and secured an extension of time until the expiration of the receivership. But he had no authority to make, nor the dispensing power on his unauthorized request to grant, such an application and I accordingly disregard it.

The charter therefore became void when the franchise tax was unpaid for two consecutive years. The claim of the State will therefore be allowed for franchise taxes falling due only while the corporation was alive. The claim for a penalty for failure to file an annual report for 1929 and 1930 will be disallowed. The corporation was dissolved before those years.

### CLAIM OF BENEFICIAL LOAN SOCIETY.

That portion of the claim which asserts a liability under surety bonds because of defalcation of employees must be disallowed and the exceptions thereto sustained. The bonds are not produced and no secondary evidence of

their terms has been offered. All that appears is that the claimant paid to the defendant some premiums for some sort of indemnity insurance. Whether the claimed losses are of a nature to fall within the terms of the bonds it is impossible to say, in the absence of some sort of proof showing the terms of the contract. There is no element of laches as contended.

The rest of the claim, being for a return of prorated premiums, will be allowed in the amount which I understand the solicitors have agreed upon as proper if the principle of liability is found by the court to exist. I am of opinion the liability exists. The claimant undoubtedly paid premiums for some sort of insurance. Just what were the terms of the contract, I am unable to say, further than that it was insurance against loss in some form. The appointment of a receiver for the defendant terminated its policy contracts whatever they were, and the claimant as a policy holder is entitled to prove for the amount of the premiums that were unearned. *American Casualty Ins. Co.'s Case* (*Boston & A. R. Co. v. Mercantile Trust & Deposit Co.*), 82 *Md.* 535, 34 *A.* 778, 38 *L. R. A.* 114; *Insurance Com'r. v. Commercial Insurance Co.,* 20 *R. I.* 7, 36 *A.* 930; *Gray v. Reynolds,* 55 *N. J. Eq.* 501, 37 *A.* 461; 14 *R. C. L. p.* 853, § 20; 32 *C. J.* 1039; *Joyce, The Law of Insurance,* (2d *Ed.*) § 1454.

Order accordingly.