PHILIP J. CARPENTER,

*vs.*

GRIFFITH MORTGAGE CORPORATION, a corporation of the State of Delaware.

*New Castle, April* 13, 1934.

*Stewart Lynch,* for receivers.

*Martin E. Smith,* for Cora D. Barlow, a stockholder.

*Henry R. Isaacs,* for certain stockholders.

*James R. Morford,* of the firm of Marvel, Morford, Ward and Logan, for Margaret G. Gibson and Elwood A. Davis, stockholders.

THE CHANCELLOR: The case of *Cooney v. Arlington Hotel Co.,* 11 *Del. Ch.* 286, 101 *A.* 879, affirmed 11 *Del. Ch.* 430, 106 *A.* 39, 7 *A. L. R.* 955, settles the jurisdiction of the court to entertain assessment proceedings for the benefit of creditors upon application of the receivers of an insolvent corporation created under the general law where the corporate assets are insufficient to meet the corporate debts and the assessment is sought against stockholders who have not paid the whole of the consideration payable for their stock. In view of *Cooney v. Arlington Hotel Co., supra,* it is not necessary to discuss the question argued on one of the briefs that an assessment for the benefit of creditors is not enforceable through receivers unless the board of directors had prior to the receivership directed it.

In the instant case creditors were notified to file and prove their claims. When it appeared that the corporation possessed no assets from which its creditors could be paid,

the pending petition was presented praying that holders of and subscribers to stock who had not paid the consideration payable therefor should be assessed in an amount sufficient to cover the claims of the creditors and the costs and expenses incident to the collection of the assessments. The persons shown by the books of the corporation to be liable to the proposed assessment were duly notified to appear and show cause why the same should not be made, and, if made, why the receivers should not be authorized to enforce the same by appropriate suits. Opportunity was afforded every party in interest to object to any of the claims for the payment of which the assessment proceedings were inaugurated.

It is not necessary to elaborate upon the various steps heretofore taken which lead up to the present stage of the cause, nor to burden this opinion with the details of facts and figures which supply the basis for the terms of the order which is now sought. Only those matters will receive notice which the solicitors representing various stockholders or subscribers, or the receivers have deemed it worth while to raise and discuss.

1. It was objected by the solicitor representing Margaret G. Gibson and Elwood A. Davis that inasmuch as there is an alleged asset in the form of a right of action against the officers and directors of the corporation, that asset should be determined and realized upon in advance of an assessment in order to determine whether or not there is a deficiency of assets that justifies the assessment. The solicitor advancing this objection has since withdrawn it, frankly stating that he is convinced that it is not tenable. In reaching his conclusion he has relied principally upon the authority of *Cumberland Lumber Co. v. Clinton Hill Lumber & Mfg. Co.*, 64 *N. J. Eq.* 517, 54 *A.* 450, which appears to me amply to sustain it.

2. Numerous persons who appear on the books of the corporation either as stockholders or subscribers for stock filed answers in response to the rule issued on the receivers'

petition and set up various reasons why no assessment should be undertaken against them. The reasons are such as the following: That the alleged stockholder has paid in full; that the stock held was a gift and supposed by the recipient to have been fully paid up; that while a subscription was made and a covering note given, yet the understanding was that the transaction was only tentative, subject to withdrawal and was in fact cancelled; that the subscription was conditional; that no relation of stockholder or subscriber was ever entered into; that the subscription was obtained by fraud; or that there was no acceptance by the corporation of the subscription.

All persons who have answered and placed their denial of liability to be assessed on one or another of the grounds just described, appear by the books of the company to be either stockholders or subscribers for stock. Their alleged defenses are individual. It is not proper in this proceeding for the court to try the issues that are peculiar to each answering defendant. The receivers are entitled to rely upon the records of the company as *prima facie* correct. If any person to whom those records point as liable to an assessment disputes their verity and denies the liability which they assert, the proper place and time to show their falsity is in the court where an action may be instituted and at the trial of the issues there drawn to a head by appropriate pleadings. *Cooney v. Arlington Hotel Co., supra; Shaw, et al., v. Lincoln Hotel Corp.*, 18 *Del. Ch.* 87, 156 *A.* 199. The laying of the assessment does not adjudicate an alleged stockholder's liability and bar him from his proper defenses to the claim.

3. In behalf of subscribers to stock as distinguished from holders of stock it is contended on behalf of several of the respondents to the rule, that no liability for the benefit of creditors exists. This contention is answered by Chancellor Curtis in *Cooney v. Arlington Hotel Co., supra*, who at page 305 of the report in 11 *Del. Ch.*, 101 *A.* 879, 887, categorically stated that "as to creditors, there is no

difference between the liability of holders of stock and subscribers to stock, for both are liable," and by Chief Justice Pennewill, speaking for the Supreme Court in affirmance of the decree of the Chancellor, at page 439 of 11 *Del. Ch.*, 106 *A.* 39, 43, who said, "unpaid *subscriptions* unquestionably are liable."

4. But, it is said some of the subscriptions were taken after the corporation had been organized and had been functioning as a going concern for something like a year or more. The contention is made that where that is the case there is no power conferred by the law by which an assessment in an insolvency receivership can be justified. A distinction is sought to be drawn between subscriptions to stock taken on the one hand before the corporation has become organized and on the other, subscriptions taken after the organization of the corporation has been completed. The former, it is argued, are liable to the burden of assessment on the application of a receiver in insolvency, while the latter are not. It is said that *Cooney v. Arlington Hotel Co., supra,* involved subscriptions at or before organization, and, therefore, upon the present point it is not an applicable authority. But the fact is that with respect to some of the subscriptions which were the bases of assessment in that case, they were received by the corporation after its organization. No distinction was urged in that case between pre and post organization subscriptions and so the court found no occasion to pass upon the question which is here rather insistently urged.

When it is remembered that subscriptions for capital stock are, as in substance stated by the Supreme Court of this State in the *Arlington Hotel Case* (page 439 of the report in 11 *Del. Ch.*, 106 *A.* 39), capital assets which are ear-marked for the benefit of creditors, the time when they were received in its relation to the time of the completed formal organization of the corporation can have no possible effect in reason upon the essential nature of the liability of the subscribers as a liability incurred by them to supply the

capital funds to which creditors may look for protection. The upshot of the argument which is based on the distinction here sought to be established appears to be that if the subscription were taken *after* organization, no assessment can be made upon them except by resolution of the directors under *Section* 21 of the *General Corporation Law* (*Revised Code* 1915, § 1935). If the corporation is a going concern, such an assessment and call by the directors is a prerequisite to the subscriber's duty to pay. It was so held in *Louisiana Oil Co. v. Raskob*, 32 *Del.* (2 *W. W. Harr.*) 564, 127 *A.* 713. But where the corporation is insolvent and a receiver has been appointed for it, the court through its receiver performs the duty of the directors in the matter of assessments upon unpaid stock and subscriptions when the rights of creditors require it. *Shaw, et al., v. Lincoln Hotel Corp., supra.*

It seems to be thought by the solicitor who has raised the distinction now under examination that because *Section* 8 of the *Act* (*Revised Code* 1915, § 1922), authorizes subscriptions to be taken by the incorporators before directors are elected and *Section* 21 authorizes subscriptions to be taken by the directors after they are elected, the obligation to pay for stock which *Section* 20 (*Revised Code* 1915, § 1934), imposes for the protection of creditors has two pieces of mechanism for its enforcement in the event of insolvency, viz., an assessment by the court in the former case, and only an assessment by the directors in the latter. There is no basis in the statute for such a notion and much less, if less can be predicated of none, in reason. *Section* 14 (*Rev. Code* 1915, § 1928), which was referred to in the argument as bearing on the matter of subscriptions has no relation thereto. It refers primarily to the sort of property that may be received in payment for stock or subscriptions.

5. The receivers in their petition seek not only the laying of an assessment for the benefit of creditors. They go further in their request. They seek also to have the court collect from the unpaid stock and subscriptions the

full amount thereof regardless of whether that amount is in excess of the total of the debts. In this they proceed upon the assumption that in cases of corporate insolvency the court should enforce payment of the entire amount due from stockholders and subscribers on account of stock and subscriptions, to the end that as between those members of the corporation who paid for their stock in full and those who paid in part or not at all the losses might be equalized.

Where the assets of an insolvent corporation have been converted into cash, all its debts have been paid and nothing remains to be done except for the court to distribute the balance of the fund among stockholders, equity exacts in such case that if some of the stockholders have paid for their stock in full and others only in part, the latter shall be brought upon a footing of equality with the former by being charged with their unpaid stock obligations, and, the situation of all having been thus equalized, the distribution will then proceed in accordance with the principle of equality. *Penington v. Commonwealth Hotel Construction Corporation*, 17 *Del. Ch.* 188, 151 *A.* 228, affirmed on this point 17 *Del. Ch.* 394, 155 *A.* 514, 75 *A. L. R.* 1136.

But that is not this case. Here, there is not and never will be any fund to distribute among stockholders, unless stockholders and subscribers for stock who have not paid in full therefor are made to supply a fund by payment of the sums due on account thereof. The court is not asked to equalize a loss common to all as an equitable incidence to its duty of distributing a fund. What it is asked to do is to apply the principle of equalization of loss, not as the incident to distribution of a fund in hand, but as justification for the collecting together of a fund to distribute.

The difference is a most material one. There is no justification in the statute for the proposition that upon insolvency the court should call in all unpaid subscriptions and demand payment in full from all stockholders, not for the benefit of creditors, but for the benefit of stockholders. The statute in *Section* 20 thereof lays an express obligation

upon holders of partly paid stock to pay in full therefor up to the point necessary for the liquidation of the corporate debts. This obligation probably exists even in the absence of the statute. Whether the partly paid stock should be paid for in full for the benefit of the corporation and stockholders generally, the corporation functioning, is a question which the statute, by *Section* 21 by its provisions for assessments and calls, appears to refer to the judgment of the directors. *Louisiana Oil Co. v. Raskob, supra.*

Now the responsible directors of the corporation not having seen fit to call in the stock obligations while the corporation was in their active charge, it is asked by the receivers that the court, in the interest of stockholders, do that which the directors, whom those same stockholders selected as their managing agents, declined or omitted in the exercise of their discretion to do. No statute exists which confers such power on the court. But if the court could discover in the general principles of equity a power aside from statutory authorization to act as is now requested, I doubt very much whether the court should exercise the power, in view of the inaction and indifference of the stockholders when the matter was in their control.

The question of whether an assessment and call should be made in the interest of stockholders alone strikes me as a matter of internal management with which the .court should not concern itself either on its own initiative or on that of its receiver. Why should the court exert itself in the conduct of an assessment and collecting enterprise in the interest of stockholders which they would not, or at least did not, choose through their selected agents to conduct for themselves? Their situation is entirely different from the situation of creditors. In behalf of the latter the statute creates a distinct right to look to the unpaid stock obligations as assets for their satisfaction, and they have no means of initiating action to enforce the reduction of those assets to a form that renders them available so long as the corporation is in the control of its stockholders and

their creatures, the directors. With respect to the stockholders, the right is theirs through their agents, the directors, to compel their associates to pay the full measure of their obligations. The stockholders thus have it in their power to prevent that inequality of burden which the receivers in this case, notwithstanding the indisposition of the responsible management to act, now ask the court to prevent. As before stated, the statute lays no duty on the court in the event of insolvency to exert itself in this regard. The only statutory provision (*Section* 20 of the *General Corporation Law*) that is found which warrants the view that unpaid subscriptions may be enforced by other than the directors, expressly indicates that the enforcement is for the benefit of creditors only.

The appointment of a receiver for a corporation does not result in its dissolution. *Du Pont v. Standard Arms Co.,* 9 *Del. Ch.* 315, 81 *A.* 1089; *Badenhausen Co. v. Kidwell,* 12 *Del. Ch.* 370, 107 *A.* 297; *Jones v. Maxwell Motor Co.,* 13 *Del. Ch.* 76, 115 *A.* 312; *State v. Surety Corp. of America,* 19 *Del. Ch.* 17, 162 *A.* 852. If, therefore, the liability exists upon the holders of and subscribers to stock the consideration for which has not been fully paid, to make payment in order that the losses suffered by the enterprise, notwithstanding its insolvency, may be spread in equal measure upon all of its participants, the corporation, when the receiver is discharged, may inaugurate and carry through the proper procedure to secure that end. (The "If" in the sentence just written is to be emphasized.)

The authorities are not uniform upon the question here under examination, of the right of receivers to sue subscribers in order to equalize losses among stockholders. The following are cited on the brief as supporting the view that the court should conduct assessment proceedings and authorize suits through the receivers not only to secure payment of the claims held by creditors but as well to equalize the losses of the stockholders: *Graves v. Denney,* 15 *Ga. App.* 718, 84 *S. E.* 187; *Hartman v. Insurance Co.,* 32 *Grat.*

*(Va.)* 242; *Pope v. Merchants' Trust Co.,* 118 *Tenn.* 506, 103 *S. W.* 792.

On the other hand the following authorities take a *contra* view: *Cumberland Lumber Co. v. Clinton Hill Lumber Mfg. Co.,* 57 *N. J. Eq.* 627, 42 *A.* 585; *Rosoff v. Gilbert Transportation Co., (D. C.)* 204 *F.* 349; *Fletcher v. Bank of Lonoke,* 71 *Ark.* 1, 69 *S. W.* 580; *Swearingen v. Dairy Co.,* 198 *Pa.* 68, 47 *A.* 941, 53 *L. R. A.* 471. These cases were cited and their applicable language quoted by the Superior Court of this State sitting in banc in *Philips, et al., v. Slocomb,* 167 *A.* 698. I refer to the opinion of Judge Rodney who spoke for the court in banc in that case, for the extracts from the foregoing citations which are pertinent to this one, though the point here presented was not passed upon in that one. In 13 *Fletcher's Cyclopedia of Corporations,* permanent edition, *Section* 6062, it is stated,

"Generally, however, stockholders are liable for a balance remaining unpaid on their stock in a suit by or for the benefit of creditors of the corporation to such an extent, and only to such an extent, as payment may be necessary for satisfying the debts of the corporation, together with the interest and the costs."

In support of this text numerous cases, which I do not feel called upon to review, in addition to those hereinbefore noted are cited.

*Lex v. Selway Steel Corp.,* 203 *Iowa,* 792, 206 *N. W.* 586, was cited as supporting the view that a receiver in insolvency may be authorized to enforce the payment in full for stock in order thereby to bring in a fund for the equalization of losses for the consequent benefit of fully-paid stockholders. I do not understand the court in that case to have so decided. The court itself took pains to avoid being so understood. It expressly stated that nothing in its conclusions was inconsistent with its decisions in *State v. Des Moines Union Stock Yards Co.,* 197 *Iowa,* 987, 197 *N. W.* 1009, 35 *A. L. R.* 487, which held that there was no right in a receiver to enforce the payment in full for stock where

142

the debts of a corporation have been paid and the exaction of payment was exclusively for the benefit of stockholders —that is to say, simply for the equalization of loss.

An order will be entered adjudging the amount of the unpaid indebtedness of the corporation and assessing upon the subscribers to and holders of stock who have not paid in full therefor such portion of the amount due thereon as is necessary to pay the adjudicated indebtedness and the costs and expenses of administration. Authority will also be conferred on the receivers to enforce payment of the sums assessed by suit if necessary. The order should contain a clause that it is made without prejudice to any defense that any stockholder or subscriber may have to any action which might be brought to enforce the receivers' demand.