34

In the Matter of the Receivership of INTERNATIONAL RE-INSURANCE CORPORATION, a Delaware corporation.

*New Castle, March 18, 1946.*

*C. Edward Duffy,* for the Receivers.

*Alfred C. Bennett,* of New York City, also filed a brief for the Superintendent of Insurance for the State of New York in support of some of the exceptions filed.

The creditors were not represented.

Because of the many difficult questions raised by the exceptions, the Chancellor referred the determination of the entire matter to Edwin D. Steel, Jr., an attorney-at-law of Wilmington, as a special master, and directed him to report his conclusions to the court..

The master filed the following report which considered all of the questions raised:

Receivers were appointed by the Chancellor of Delaware for International Re-Insurance Corporation, a Delaware corporation, on April 19, 1933, pursuant to *Section* 3883 *of the Revised Code of Delaware of* 1915. Inasmuch as International had conducted a casualty and surety business in nearly all states of the Union, receivers were also appointed in twenty-three (23) ancillary proceedings throughout the country.

On October 19, 1939, the Chancellor appointed a special master to pass upon the claims filed in the Delaware receivership proceeding. The special master has filed his report, recommending the allowance of fourteen (14) claims. The receivers excepted to the recommendation of the special master with respect to nine (9) of these claims.

This opinion is addressed to the validity of the receivers' exceptions.

Stated broadly, the claimants fall into two categories:

First, persons who have filed claims based upon judgments recovered by them subsequent to the appointment of receivers, against persons insured under policies issued by International, or by other companies whose obligations International has assumed. These claims are based upon the alleged fact that the assured is insolvent, and for that reason the injured persons are entitled to recover against International under the so-called "insolvency clauses" which the policies are said to contain.

Second, persons who have filed claims based upon judgments which have been obtained against assureds which have been fully satisfied of record by the claimants upon payment to them by the assureds of amounts substantially less than the full amounts of the judgments. These claims are limited to the difference between the amount of the

judgment and the amount paid to the claimant by the assured.

While the foregoing classifications describe generally the character of the claims dealt with by the special master, a consideration of the claims themselves reveals important factual distinctions which must be heeded if a proper disposition of the claims is to be made. As a consequence, the claims will be considered seriatim.

### Claim No. 3,745—Gussie Freundlich.

The proof of claim reveals that claimant was injured in an accident which occurred on August 20, 1929 in New York as a result of a collision between a bus owned and operated by Monticello New York Reliable Coach Co. (hereinafter referred to as "Monticello") and a car in which claimant was riding; that on December 1, 1933—subsequent to the appointment of receivers by this court—a judgment in the amount of $22,664.20 was recovered in the state court of New York by claimant against Monticello, a certified copy of such judgment being annexed to the proof of claim.

The receivers filed exceptions to the proof of claim which alleged:

"That said claimant has no claim against International Re-Insurance Corporation, its receivers or its assets, and was so advised by letter addressed to claimant's attorney dated 9-29-43."

The letter dated September 29, 1943, from the receivers which is referred to in the exceptions (as amended by letter of November 4, 1943) states:

"I note from the proofs of claim that they are based upon a judgment returned against the Monticello New York Reliable Coach Company on December 1st, 1933. International Re-Insurance Corporation entered receivership on April 19th, 1933 and it is the opinion of the Receivers, based upon the controlling decisions and rulings of the Chancery Court of the State of Delaware, that they are not bound by judgments taken after the date of receivership as the basis of a claim against assets in their possession.

"The facts contained in our files clearly indicate that the accident upon which the claim is based was due to the carelessness and negligence of the driver of the Chevrolet car in which your client was riding. The Receivers therefore have no alternative but to take exception to these claims and bring the matter on for hearing before the Special Master appointed to hear disputed claims * * *."[1]

At the hearing before the special master the receivers conceded that Monticello was insured at the time of the accident by a policy upon which International is liable "if a proper claim is made." At the same time, claimant conceded that the policy was limited to $5,000 for an accident involving one person, and to $10,000 for an accident involving more than one person.

The receivers, however, objected to the allowance of the claim "because it was based upon a judgment obtained after receivership."

The attorney for the claimant stated that he had never seen the policy under which Monticello was insured; and the attorney for the receivers stated that the receivers did not have the policy—the assured had it.

No evidence was introduced by the claimant or by the receivers. At the conclusion of the hearing, the special master continued it "to a date hereafter to be set and notice to the attorneys for the claimant by the Receivers, with instructions of the Special Master to file a memorandum on the legal point involved."

So far as I have been able to ascertain, no further hearing was held upon the claim.

The special master recommended the allowance of the claim in the amount of $5,000. To this recommendation the

---

[1] The letter of September 29, 1943, stated, in error, that "the accident upon which the claim is based was not due to the carelessness and negligence of the driver of the Chevrolet car in which your client was riding." The letter dated November 4, 1943, explained that it was intended to state that the accident "was due" to the negligence of the driver of the Chevrolet car.

receivers excepted upon six grounds. These will be considered in the order stated by the receivers.

Exception 1.—The claim is based upon a judgment obtained against Monticello subsequent to the date of the appointment of receivers for International, which judgment cannot be used as a basis for a claim against the assets in the hands of the receivers.

At the hearing it was conceded by the receivers that:

"* * * The Monticello New York Reliable Coach Company was insured at the time of the accident by an insurance policy upon which International Re-Insurance Corporation is liable to pay if a proper claim is made * * *."

This statement was made in connection with a claim by an injured party against the insurer. The only reasonable interpretation, therefore, to place upon the statement is that the policy which International had issued to Monticello contained provisions of some kind which would enable the injured party, under circumstances not specifically disclosed, to recover against International provided a "proper claim" was made. The only provision of an insurance policy authorizing an injured party to recover against an insurer, which I have seen in the multitude of cases which I have read is the so-called "insolvency clause." I must assume, therefore, that the concession which the receivers made at the hearing is tantamount to an admission that the policy issued by International to Monticello contained an "insolvency clause" of some kind.

Although the terms of the policy issued to Monticello are not revealed, the master cites the following provision as an example of the "insolvency clause" contained in certain of the International policies:

"Insolvency or bankruptcy of the insured hereunder shall not relieve the company from payment of damages for injuries sustained or loss occasioned while this policy is in full force and effect. In case execution against the insured is returned unsatisfied in an action brought by the injured person, or his or her personal representative

in case death results from the accident, because of such insolvency or bankruptcy, an action may be maintained by the injured persons, or his or her personal representative, against the company under the terms of the policy for the amount of the judgment in the said action not exceeding the amount of this policy."

For purposes of considering the legal question raised by the receivers' first exception, I shall assume that the policy issued to Monticello contained the "insolvency clause" above quoted, and that claimant offered in support of his claim, not only a certified copy of the judgment against Monticello which is attached to the claim, but also evidence that execution on the judgment was issued and returned unsatisfied.[2]

The question raised by Exception No. 1 may be stated as follows: Should a claim by an injured party be allowed against an insolvent insurer, based upon an "insolvency clause", when the only evidence to support the claim is a judgment of claimant against the assured recovered after the appointment of receivers for the insurer, it appearing that execution has issued on the judgment and been returned unsatisfied?

The receivers contend that a claim based upon such a judgment should not be allowed, but that the injured party should be required to prove in the receivership proceeding by evidence other than the judgment that the insured was liable to the injured party. The special master reached a contrary conclusion.

In general, I agree with the conclusion of the master and with the reasons he has assigned for his views. By way of supplement to the opinion of the master, the following considerations, it seems to me, afford additional support for his views.

No inherent reason exists why a judgment against an assured recovered after the appointment of receivers for the

---

[2] Whether or not these assumptions are justified will be dealt with in considering Execeptions 2 and 3.

insurer, and based upon an accident occurring prior to the receivership, should not serve as the basis of an allowable claim in the receivership. The law is settled that the claim of an assured should be allowed by receivers of an insolvent insurer, notwithstanding the fact the claim is based upon a judgment recovered against, and paid by the assured subsequent to the receivership of the insurer, if the event giving rise to the liability of the assured occurred prior to the receivership. *American Casualty Insurance Company's Case (Boston & A. R. Co. v. Mercantile Trust & Deposit Co.)*, (1896) 82 *Md.* 535, 34 *A.* 778, 38 *L.R.A.* 97; *Ross v. American Employers' Liability Ins. Co.*, (1897) 56 *N. J. Eq.* 41, 38 *A.* 22; *In re Empire State Surety Co.*, (1915) 214 *N. Y.* 553, 108 *N.E.* 825.

Exhaustive research has failed to uncover a single case which has involved the allowance of a claim by an injured party against an insolvent insurer, based solely upon a judgment recovered against the insured following the receivership of the insurer. The courts in this and other jurisdictions, however, have recognized that, as a general proposition, an injured party seeking to recover under an insolvency clause stands in the same position with respect to the insurer, as does an assured who has paid a judgment which an injured party has recovered against him, and thereafter looked to his insurer for reimbursement. *Brooks Transp. Co. v. Merchants' Mut. Casualty Co.*, (1933) 6 *W. W. Harr.* (36 *Del.*) 40, 171 *A.* 207, 210; *Coleman v. New Amsterdam Casualty Co.*, (1928) 247 *N. Y.* 271, 160 *N.E.* 367, 72 *A.L.R.* 1443, 1446; *Seaboard Mut. Casualty Co. v. Profit*, (4 Cir., 1940) 108 *F.* 2d 597, 598, 126 *A. L.R.* 1105.

In the *Brooks* case, Judge Rodney, in discussing the effect of an insolvency clause in a casualty policy, said (6 *W. W. Harr.* (36 *Del.*) 47, 171 *A.* 210):

"* * * The effect of the provision of the policy is to give to a person who has sustained damages a cause of action against an insurer

for the same relief that would be due to a solvent principal or insured person who is seeking indemnity and reimbursement from the insurance company after a judgment against him had been satisfied. * * *"

In the *Profit* case, Judge Soper referred to the position of an injured party seeking to recover against an insurance company under an insolvency clause as follows (108 *F. 2d* 597, 598, 126 *A.L.R.* 1105):

"In considering the merits of the appeal, it must be borne in mind that Profit stands in the same position as the insured would have occupied had he paid the judgment of the State Court against him and sued the Casualty Company on his policy. * * *"

Since the decisions recognize that a judgment recovered against and paid by an insured, after the receivership of the insurer, must be recognized as the basis of a claim by the insured against the receivers of the insurer, the fact that an injured party bases his claim against an insolvent insurer, upon a judgment recovered against the assured after the appointment of receivers for the insurer, should not in and of itself prevent recognition of the claim by the receivers. This is particularly true in Delaware, since the Court of Chancery has upheld the allowance of a claim based upon an executory contract fully performed at the time of the appointment of receivers, but breached thereafter. *In re D. Ross & Son, Inc.,* (1915) 10 *Del. Ch.* 434, 95 *A.* 311. There Chancellor Curtis adopted the rule laid down in *Pennsylvania Steel Co. v. New York City Ry. Co.,* (2 *Cir.,* 1912) 198 *F.* 721. In the latter case, it was held that whether a particular claim is provable need not be determined with reference to the date of the appointment of receivers, but that any claim should be allowed which is filed within the time fixed by the court, provided it is certain, or capable of being rendered certain by that date. *In re D. Ross & Son, Inc., supra,* Chancellor Curtis rejected the principles laid down in *People v. Metropolitan Surety Co.,* (1912) 205 *N. Y.* 135, 98 *N.E.* 412, *Ann. Cas.* 1913D, 1180, in which the court disallowed a claim against an insolvent surety, based upon its attachment bond, for the

reason that the judgment which the surety by his bond had undertaken to pay had not been recovered against the defendant until after a receiver had been appointed for the surety. The pronouncements of this court in *In re D. Ross & Son, Inc., supra,* affords support for my view that the Freundlich claim should not be disallowed merely because it is based upon a judgment recovered after the inception of the receivership of International.

While factually different from the instant case, *Riehle, Receiver, v. Margolies,* 1929, 279 *U.S.* 218, 49 *S. Ct.* 310, 73 *L. Ed.* 669, established certain basic principles which, it seems to me, require this court to recognize the claims of an injured party even though based upon a judgment re-° covered against an assured subsequent to the receivership of International. Riehle had been appointed receiver by the Federal Court in New York. An order was entered by that court restraining the prosecution of suits against the company and directing creditors to file their claims with the receiver. Two months prior to the receivership, Margolies had begun an action for breach of contract in the New York state court against the corporation for which Margolies had been appointed receiver. Accordingly, Margolies applied to the receivership court for a modification of its injunctive order, in order that he might proceed with his suit in the state court. The order of the District Court denying Margolies' motion was reversed on appeal *sub nom. Hatch v. Morosco Holding Co., Inc.,* (2 *Cir.,* 1925) 5 *F.* 2d 1015, the court stating that the injunctive order violated *Section* 265 of the *Judicial Code.*[3] In its opinion, however, the Circuit Court of Appeals said [5 *F.* 2d 1015, 1016]:

"A direction will, however, be included in our mandate, and in the order to be entered thereupon, that should any judgment be en-

---

[3] *Section* 265 *of the Judicial Code,* 28 *U. S. C. A.* § 379, provides:

"The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a State, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy."

tered in said action in the state court, such judgment shall not be taken to be a liquidation of any claim filed or capable of being filed under the judgment [*sic*] creditors' bill herein, or as in any way affecting the right of the receiver to contest the claim so reduced to judgment de novo. Nothing, however, in our mandate shall be taken to prevent the court below permitting liquidation of Margolies' claim by suit in the state court, should it prefer so to do."

Later, Margolies applied to the receivership court for an order directing the receiver to liquidate his claim in the state court action. This motion was denied; the receiver refused to defend; and a default judgment against the corporation was entered by the state court. Thereupon, Margolies filed a proof of claim in the receivership, based upon his state court judgment. The receiver, relying upon the views expressed by the Circuit Court of Appeals, announced his election to disregard the judgment and to have the claim tried *de novo*. Margolies rested on his judgment and the District Court dismissed the claim. Margolies appealed. The Circuit Court of Appeals then held that the direction in its earlier mandate that any state court judgment should not affect the right of the receiver to contest the claim *de novo*, had been improvidently made. *Hatch v. Morosco Holding Co., Inc., (Appeal of Margolies* 2 *Cir.,* 1927) 19 *F.* 2d 766.[4] Accordingly, it reversed the judgment of the District Court and remanded the case for further proceedings. Upon remand, the receiver attempted to prove that Margolies' claim was, in fact, less than his judgment. The master refused to receive this proof and approved the claim based on the judgment. When the District Court confirmed the master's report, the receiver appealed and the Circuit Court of Appeals affirmed. *Hatch v. Morosco Holding Co., Inc. (Ex parte Margolies,* 2 *Cir.,* 1928) 26 *F.* 2d 247. In so doing, however, the court said at page 247 of 26 *F.* 2d:

"A majority of the court, as it is now constituted, think that our first decision impairs the jurisdiction of the District Court over assets already in its custody when the judgment of the state court was en-

---

[4] This decision is the subject of a case note in 41 *Harvard Law Review,* 1070.

tered. They believe that the liquidation of claims is a part of the distribution of the estate, since it determines how much each creditor shall get, and that the distribution of the estate is part of what is usually understood as jurisdiction over the res. However, the former decision was reached after unusual deliberation and full presentation of all the questions involved. If it is to be changed, only the Supreme Court may do so; in the same case and on the same claim the first ruling must stand."

*Certiorari* was then granted by the Supreme Court. *Riehle v. Margolies,* 278 *U.S.* 591, 49 *S. Ct.* 29, 73 *L. Ed.* 523. In upholding the allowance of the claim, although it was based solely upon a default judgment, Mr. Justice Brandeis, speaking for a unanimous court, said (279 *U.S.* 218, 223-227, 49 *S. Ct.* 310, 312, 73 *L. Ed.* 669):

"The appointment of a receiver of a debtor's property by a federal court confers upon it, regardless of citizenship and of the amount in controversy, federal jurisdiction to decide all questions incident to the preservation, collection, and distribution of the assets. \* \* \* *But the appointment of the receiver does not necessarily draw to the federal court the exclusive right to determine all questions or rights of action affecting the debtor's estate.*

"The contention that the judgment is not conclusive rests upon the argument that, because the appointment of the receiver draws to the appointing court control of the assets, and in the distribution of them among creditors there is necessarily involved a determination, both of the existence of the claim and of the amount of the indebtedness, the federal court must have the exclusive power to make that determination. The argument ignores the fact that *an order which results in the distribution of assets among creditors has ordinarily a twofold aspect. In so far as it directs distribution, and fixes the time and manner of distribution, it deals directly with the property. In so far as it determines, or recognizes a prior determination of, the existence and amount of the indebtedness of the defendant to the several creditors seeking to participate, it does not deal directly with any of the property. The latter function, which is spoken of as the liquidation of a claim, is strictly a proceeding in personam.* Of course, no one can obtain any part of the assets, or enforce a right to specific property in the possession of a receiver, except upon application to the court which appointed him. *Lion Bonding & Security Co. v. Karatz,* 262 *U. S.* 77, 88, 89, 43 *S. Ct.* 480, 67 *L. Ed.* 871. But the judgment of the state court does not purport to deal with the property. The sole question involved there was the existence and amount of Margolies'

claim against the corporation, and the sole question involved here is the proof of that claim. *There is no inherent reason why the adjudication of the liability of the debtor in personam may not be had in some court other than that which has control of the res. It is only necessary that in the receivership proof of the claim be made in an orderly way, so that it may be established who the creditors are and the amounts due them.*

"The power to fix the time for distribution may include the power, in the exercise of judicial discretion, to decline to postpone distribution awaiting disposition of litigation in another court over a contested claim. Compare Wm. Filene's Sons Co. v. Weed, 245 U.S. 597, 602, 38 S.Ct. 211, 62 L.Ed. 497; Pennsylvania Steel Co. v. New York City Ry., 2 Cir., 229 F. 120. But there is no reason why the character of the proof required in the receivership suit for any purpose should be different from that which would have been required had the judgment in the state court been rendered prior to the appointment of the receiver; or from that which would be required if an independent suit on the judgment were brought in the federal court. It would hardly be doubted that a final judgment, recovered in a state court prior to the commencement of the receivership suit, would establish conclusively the existence and the amount of the claim against the debtor, if later a decree were entered in the federal court distributing the funds in the receiver's hands among its creditors. Whether such a judgment recovered in a suit commenced after the appointment of the receiver would operate as res judicata we need not consider. For Margolies' suit was begun before.[5] *He had under section 265 of the Judicial Code, the right to prosecute that suit to judgment despite the institution later of the receivership proceedings. He must have, as an incident thereof, the further right to have it accepted therein as an adjudication of the existence of the indebtedness.* The fact that neither the company nor the receiver undertook to defend in the state court, is, in this connection, immaterial.

\*    \*    \*    \*    \*

"The rule that the appointment by a federal court of a receiver on a creditor's bill gives it no right to stay a suit then pending in a state court that the judgment in personam thereafter recovered therein in the state court against the debtor must be held to have established conclusively the existence and amount of the claim for the

---

[5] In *Chicago Title & Trust Co. v. Fox Theaters Corporation*, (2 Cir.,) 1934, 69 *F. 2d* 60, 91 *A.L.R.* 991, the rule of the *Margolies* case was extended to an action begun in the state court after the appointment of a receiver by the federal court.

purpose of proof in the federal court, and will enable the claimant to participate in a distribution among creditors of the debtor's property ordered therein, has long been applied in some of the lower federal courts. No case has been found in which the right has been denied. A like rule has been applied in state courts. * * *"[6]

The *Margolies* decision rests upon the broad principle that when a receivership court is powerless to enjoin an action pending in another court, the receivership court must allow any claim which is based upon the judgment if, but for the receivership, an independent action could have been maintained upon the judgment. The inability of the receivership court to prevent the recovery of the judgment in and of itself requires the receivership court to recognize the judgment.

In the instant case, this court was without power to enjoin injured parties residing in all parts of the United States from prosecuting actions against the persons whose alleged derelictions gave rise to their injuries. Lacking such power, it follows that this court must recognize judgments in favor of the injured persons, even though obtained subsequent to the appointment of receivers for International. This it must do, for precisely the same reason the Supreme Court required *Margolies'* judgment to be recognized—i. e., the court was without power to prevent the prosecution of the action which resulted in the judgment.

It is of no moment that in the *Margolies* case the injunctive power of the court was nullified by *Section* 265 *of the Judicial Code.* The rationale of the decision compels the view that the result would have been the same with respect to any claim based upon a judgment, if the receivership court was powerless to prevent prosecution of the action which resulted in the judgment.

Hence it is that this court might well say—as the Supreme Court said in the *Margolies* case, 279 *U.S. at pages* 224, 225, 49 *S.Ct. at page* 313, 73 *L.Ed.* 669—

---

[6] All underscoring supplied unless otherwise indicated.

"* * * there is no reason why the character of the proof required in the receivership suit for any purpose should be different from that which would have been required had the judgment in the state court been rendered prior to the appointment of the receiver; or from that which would be required if an independent suit on the judgment were brought * * *."

It may perhaps be argued that the rule of the *Margolies* case is inapplicable to the question under consideration, because the court expressly stated that its decision was not inconsistent with the cases holding that (279 *U.S. at page* 228, 49 *S.Ct. at page* 314, 73 *L.Ed.* 669) :

"* * * where a statutory proceeding for the winding up of an insolvent corporation is brought in the state of the incorporation, * * * the assets will be distributed only among those persons who have been found to be creditors either by that court or elsewhere with its leave, and that a judgment recovered in another state without leave from it will not entitle the plaintiff to share in the assets. * * *"

Indeed, the receivers quote the above excerpt from the *Margolies* decision to support their contention that all claims should be disallowed which are based upon the judgments rendered by another court after the Delaware court appointed receivers for International. The interpretation which the receivers place upon the *Margolies* case presupposes that the present proceeding is "a statutory proceeding for the winding up of an insolvent corporation" as that expression is used in the *Margolies* case. But demonstrably, this is not so.

The receivers of International were appointed in a proceeding instituted under *Section* 3883 *of the Revised Code of Delaware* 1915.[7] Under this section, receivers were authorized—"to take charge of the estate, effects, business and affairs thereof, and to collect the outstanding debts, claims, and property due and belonging to the company,

---

[7] This section was embodied without change in *Section* 4407 *of the Revised Code of Delaware* 1935.

with power to prosecute and defend, in the name of the corporation or otherwise, all claims or suits, to appoint an agent or agents under them, and *to do all other acts which might be done by such corporation and may be necessary and proper; * * *.*"

Although receivers appointed under *Section* 3883 *of R. C. Delaware* 1915 *may* proceed to liquidate a corporation and ultimately terminate its existence, the statute does not necessarily contemplate that in every instance corporate assets shall be turned into cash and distributed and its business and affairs wound up. Cases may exist where the court will deem it best to continue to operate the company's business through a receiver and at a later time turn the corporation back to the stockholders and officers as a going concern. *Jones v. Maxwell Motor Co.,* (1921) 13 *Del.Ch.* 76, 115 *A.* 312; *Badenhausen Co. v. Kidwell,* (1919) 12 *Del. Ch.* 370, 107 *A.* 297. The fate of a corporation for which receivers are appointed under *Section* 3883 will depend upon whether the corporation arises or fails to arise from its condition of insolvency. *Ward v. Foulkrod,* (3 *Cir.*) 1920, 264 *F.* 627, 633. Necessarily, therefore, the appointment of receivers under *Section* 3883 does not work a dissolution of the corporation. *State v. Surety Corporation of America,* (1932) 19 *Del. Ch.* 17, 162 *A.* 852, 853; *Carpenter v. Griffith Mortgage Corporation,* (1934), 20 *Del. Ch.* 132, 172 *A.* 447, 451.

That the present proceeding is not "a statutory proceeding for the winding up of an insolvent corporation" within the meaning of the *Margolies* case, is made clear by the decision in that case. Thus, to support its statement that the court of the state in which a corporation is domiciled has the exclusive power in a statutory liquidation proceeding to determine who the creditors of the corporation are, the Supreme Court cites *Attorney General v. Supreme Council American Legion of Honor,* (1907), 196 *Mass.* 151, 81 *N.E.* 966, and *Hackett v. Supreme Council American*

*Legion of Honor,* (1910), 206 *Mass.* 139, 142, 92 *N.E.* 133.[8] In the former case (upon which the latter decision was founded) the court said (81 N.E. 967) :

"The first difficulty which we have in answering this question is that these judgments as such would not be payable by the receiver out of any funds in his hands.

"By the decree dated August 12, 1904, this court, acting under Rev. Laws, c. 119 § 19, adjudged that the further continuance of business by the defendant corporation was hazardous to the public and to its certificate holders, and it took possession of the funds of the defendant corporation for the purpose of distributing its assets among its creditors and of closing its affairs. This had no direct effect on pending actions. It had, however, this indirect effect upon them. If the plaintiff in such an action wanted a judgment against the defendant corporation for some purpose other than a right to share in the assets sequestrated by and in the hands of this court, he could go on with his action. But if he wished to establish his right to share in the assets in the possession of this court the further prosecution of that action would not help him. To establish that right he had to prove his claim in this court or get an order from this court that a judgment in the action in the foreign court should establish his right to share in the assets here. It is for the court which has taken the assets of an insolvent into its hands for distribution and for that court alone to determine who its creditors are and what is due to them respectively.

"As we have said, it may in its discretion leave that issue to be determined by another court. Lowell, Bankruptcy, § 209. But in the absence of an order to that effect the subsequent judgment binds the insolvent, but not the assignee or receiver of the assets of the insolvent as representative of the insolvent's general creditors.

"In the case at bar no order has been made authorizing the receiver to submit to courts of other jurisdictions the question whether the petitioners now before us were creditors of the defendant corporation.

"These judgments do not affect the receiver, and these judgments

---

[8] The receivers of International rely upon these cases to support the proposition that a court administering assets of an insolvent corporation must determine for itself who the creditors are and the amounts of their claims, and that a judgment recovered against the insolvent corporation after receivership should not be accepted as evidence of either of these facts.

as such cannot be proved against the funds in the hands of this court through its receiver." ·

It is to be noted, however, that the Massachusetts cases involved statutes authorizing the appointment of receivers for the sole purpose of winding up insolvent corporations. In *Attorney General v. Supreme Council American Legion of Honor, supra,* the court said (81 *N.E.* 968) :

"* * * the defendant corporation has come to an end in every way and for all purposes, * **."

As previously pointed out, the appointment of receivers for International under *Section* 3883 *of the Revised Code of Delaware* 1915 did not dissolve the corporation, nor necessitate its liquidation. The receivership with which we are concerned, therefore, contrasts sharply with that involved in the *Legion of Honor* cases, where the corporation became *civiliter mortuus* the moment receivers were appointed.[9]

Rather, the International receivership is like that involved in *Pringle v. Woolworth*, (1882), 90 *N.Y.* 502. There, the court held that a default judgment obtained in Pennsylvania in an action begun against an insurance company after receivers had been appointed for it in New York, conclusively established the right of the judgment creditor to participate in the assets held by the receiver. In speaking for a unanimous court, Chief Justice Andrews said, 90 *N.Y. at pages* 510, 511:

---

[9] A proceeding in Delaware comparable to that before the court in the *Legion of Honor* cases is authorized by *Section* 464 *of R.C. Delaware* 1935 under which the Attorney General is empowered to institute an action for the appointment of receivers for an insolvent insurance company in order to "settle and close up the affairs of said company."

Furthermore, authority to appoint receivers for the sole purpose of winding up dissolved corporations generally is found in *Section* 2075 of *R.C. Delaware 1935.* Receivers appointed under this Section are restricted to doing acts "that may be necessary for the final settlement of the unfinished business of the corporation * * *."

"It was also claimed by the defendant that having been appointed receiver of the Homestead Fire Insurance Company before the commencement of the suit in Pennsylvania, no action could, after such appointment, be maintained against the company upon the policy. The only evidence as to the character of the receivership of the defendant, is found in the admission in the answer of the allegation in the complaint, that the defendant Woolworth was duly appointed receiver of the estate, property and effects of the Homestead Fire Insurance Company. It was not claimed on the trial, nor is it now claimed, that the company has been dissolved, and no such inference arises upon the evidence in the case. Upon this state of facts, it is clear that the plaintiff was not debarred by the appointment of a receiver of its property and effects, from maintaining an action against the corporation on the contract of insurance. Until judgment dissolving the corporation and ending its existence, the contract could be enforced against the company as well after as before the appointment of the receiver. This was decided in the case of Kincaid v. Dwinelle, 59, N. Y. 548. The case is analogous to that of a suit brought against a debtor for the recovery of a debt after a general assignment of his property made to a trustee for the benefit of creditors. The contract between the debtor and creditor would still subsist, and could be enforced by suit against the debtor, and a judgment between the original parties on the contract would necessarily establish the existence and extent of the obligation between them, as well as against a trustee of his estate for the benefit of creditors. Whether it would give a priority in respect to payment of the claim, is another and quite independent question. And in this case, the judgment against the company, established as against the receiver the amount of the debt or claim of the plaintiff upon the policy, and the receiver had no right to reagitate questions litigated in the action against the company, or to interpose any defense on the merits which might have been taken in the action in which the judgment was rendered. The receiver holds the property and estate of the corporation as the officer of the court, for the purpose of distribution under the direction of the court among creditors and stockholders, and in the absence of fraud or collusion, neither of which is alleged in respect to the Pennsylvania judgment, the receiver and the other creditors are bound thereby. If any reason existed to question the judgment against the company, it was the duty of the receiver to have applied to the court rendering it, to reopen the judgment, and to be permitted to defend. We are therefore of the opinion that the exception taken by the defendant to the ruling that the judgment conclusively established the amount of the debt, cannot prevail. It will be for the court to direct the receiver in respect to the payment of creditors, and their respective priorities. These are

the only questions brought to our attention by the counsel for the appellant."

Significantly, the Supreme Court in *Riehle v. Margolies,* relied upon in *Pringle v. Woolworth,* to sustain the claim based upon a judgment recovered against the corporation after receivers had been appointed for it. In doing so, the court drew a distinction between *Pringle v. Woolworth* and other like cases cited by it,[10] on one hand, and the *Legion of Honor* cases, on the other hand. The distinction was apparently based upon the fact that in the *Legion of Honor* cases, the appointment of receivers terminated the life of the corporation in all of its aspects, whereas in *Pringle v. Woolworth* this was not true. It has been suggested that this distinction is questionable.[11] Be that as it may, it is clear that the International receivership is not a statutory proceeding for the winding up of a corporation such as was before the court in the *Legion of Honor* cases.

To properly understand the cases, it is essential to bear in mind that when the appointment of receivers effects a dissolution of a corporation, it is no more possible to recover a valid judgment against the corporation than it would be to recover a similar judgment against a dead man. *Pendleton v. Russell,* 1891, 144 *U.S.* 640, 645, 12 *S.Ct.* 743, 36 *L.Ed.* 574. Upon dissolution, all pending actions against the corporation abate unless saved by statute. 16 *Fletcher Cyclopedia Corporations, (Perm. Ed.)* § 8147. But if the appointment of receivers does not result in dissolution, pending actions against the corporation do not abate. 16 *Fletcher Cyclopedia Corporations, (Perm. Ed.)* § 7800. As stated,

---

[10] These are found in *Riehle v. Margolies, supra,* 279 *U.S. at page* 227, 49 *S. Ct.* 314, 73 *L.Ed.* 669, *notes 2 and* 3. Dictum to the same effect is found in *Carter v. Christ, La.App.,* (1933,) 148 *So.* 714, 715, 719.

[11] Judge Beach of the Connecticut Supreme Court of Errors, in an article entitled "Judgment Claims in Receivership Proceedings" states that the *Legion of Honor* cases are in "direct conflict" with *Pringle v. Woolworth.* 30 *Yale Law Journal,* 674, 679. *Pringle v. Woolworth,* Judge Beach concludes, is "the right rule of decision (679)."

principles enunciated in cases in which corporations have been dissolved are irrelevant to a receivership proceeding under *Section* 3883 *of the Revised Code of Delaware of* 1915, for the reason that under this later section, corporate life is not terminated by the appointment of receivers.

The receivers, however, insist that a court which has taken assets of an insolvent corporation into its hands for distribution has the sole right to determine who are its creditors, and that judgments recovered after receivership cannot be used as the basis for a claim against assets in the hands of the receiver.[12] The contention which the receivers now urge upon the court was pressed in *Riehle v. Margolies, supra.* In rejecting it, the court said, 279 *U.S. at pages* 224, 225, 49 *S.Ct. at pages* 313, 73 *L.Ed.* 669:

[12] Analysis of the cases cited by plaintiff demonstrates that for the most part they are inapplicable. *Attorney General v. Legion of Honor, supra, Hackett v. Legion of Honor, supra,* and *Levy v. Union Indemnity Co., (La.App.,* 1933,) 146 *So.* 182, involved receiverships effecting a dissolution of the corporations. *Little v. Chicago Nat. Life Ins. Co.,* (1937,) 289 *Ill.App.* 433, 7 *N.E.* 2d 326 was an action in one court to set aside a fraudulent conveyance with respect to assets in the hands of receivers appointed by another court—i. e., a direct interference with the res. *Carter v. Christ, (La.App.,* 1933,) *supra,* merely holds that the court, appointing a receiver is empowered to authorize him to represent the corporation in an appeal from a judgment recovered against it prior to receivership. *Porter v. Sabin,* 1893, 149 *U.S.* 473, 13 *S. Ct.* 1008, 37 *L.Ed.* 815, simply determines that a receiver is a necessary party in a stockholder's derivative action for the benefit of the corporation for which the receiver is acting. *Hannigan v. Italo Petroleum Corporation of America,* 6, *W. W. Harr.* (36 Del.) 442, 178 *A.* 589, *Id.,* 7 *W. W. Harr.* (37 Del.) 227, 181 *A.* 660, holds that the disallowance of a claim filed with the receiver, in the absence of intervention by the claimant or the appearance by him to litigate his rights in the receivership, does not bar claimant from suing the corporation after receivers have been discharged. *O'Mahoney v. Belmont et. al.,* (1875) 62 *N.Y.* 133, decided that when receivers are appointed for the same person in successive actions, any interest of the receiver appointed in the second action, in property held by the receiver appointed in the first action, is subordinate to the interest of the latter. *Morton v. Stone Harbor Imp. Co., (N.J.,* 1899) 44 *A.* 875, *and Evans v. Illinois Surety Co.,* (1925) 319 *Ill.* 105, 149 *N.E.* 802, afford support for

"\* \* \* There is no inherent reason why the adjudication of the liability of the debtor in personam may not be had in some court other than that which has control of the res.

"The establishment of a claim constituting the basis of the right to participate in the distribution of property in the possession of one court is often conclusively determined by a judgment obtained in another court \* \* \*."

Speaking of the problem under consideration, Judge Beach said (30 *Yale Law Journal*, 674, 680) :

"The disinclination of the court of the receivership to submit to the supposed dictation of another court in respect to the validity and amount of a claim on the fund may not be entirely unnatural, but it is purely sentimental. No court has the right to assume that a judgment of another court of competent jurisdiction is unjust; and if such other court had jurisdiction of the defendant and was not imposed upon, its judgment on the same issues between the same parties is conclusive in any tribunal which administers justice according to law. Even so, the fund cannot be reached except by the judgment of the court of the receivership."

In asking that claims, based solely upon judgments against assureds obtained after the appointment of receivers for International, be rejected, the receivers stress the importance of the order of this court dated April 28, 1933, by which the receivers were directed not to defend suits then pending or thereafter brought against holders of policies issued by International. The receivers state that almost without exception all of the policies issued by International impose upon assureds the necessity of notifying International of the commencement of actions against the assureds, and of cooperating with International in the defense of such actions; and that the law is settled that the failure of an

---

the receivers' contention that a receivership court is not required to recognize judgments obtained against the corporation after the appointment of receivers. In *Riehle v. Margolies*, the *Evans* case is stated to be contrary to *Pringle v. Woolworth*, and the Supreme Court followed the latter decision. *Morton v. Stone Harbor Imp. Co.*, decided by the Court of Chancery of New Jersey, is at variance with *Gray v. Taylor*, (1899) 59 *N.J.Eq.* 621, 44 *A.* 668, decided by the Court of Errors and Appeals of New Jersey.

assured to comply with its obligation in either of these respects, releases the insurer from liability to the assured or anyone else, because the insurer has been deprived of an opportunity to defend the claims. From this, the receivers conclude that since the order of April 28, 1933, prohibited the receivers of International from defending actions brought against its policyholders, no claim should be recognized which is based upon a judgment obtained against such a policyholder after the entry of the order. To support this view, the receivers argue:

"* * * it would logically seem to make little difference whether that fundamental right to defend a claim on its merits has been denied the Insurer by an omission on the part of the Assured or by the imposition of a properly entered Court order."

This statement, in my opinion, demonstrates the fundamental fallacy of the receivers' position. The order which this court entered directing the receivers not to defend actions against policyholders was entered as a result of the recommendation of the receivers themselves. The failure of the receivers to defend the actions instituted against policyholders, therefore, must be viewed in the same light as the voluntary failure by a solvent insurer to defend an action against one of its assureds. In each case representatives of the insurer have violated their contractual undertaking to defend actions against their policyholders. Obviously, a solvent insurer could not successfully defend against an action brought by an injured party by pleading its own breach of contract. The situation of the receivers who are enjoined from defending suits against policyholders as a result of their own recommendation stands upon no different footing.

Again, the receivers argue that if they are required to recognize judgments against assureds recovered after the appointment of the receivers, the liquidation of an insolvent insurance corporation would never end, for it would be impossible for the receivers to determine the liabilities until after all law suits, begun either before or after the receivership, had been concluded. To this, there is a short answer.

No one can obtain any part of the assets in the hands of receivers, or enforce a right to specific property in the possession of receivers, except upon application to the court appointing them. *Lion Bonding Co. v. Karatz,* (1923) 262 *U.S.* 77, 88, 89, 43 *S.Ct.* 480, 67 *L.Ed.* 871; *Riehle v. Margolies, supra,* 279 *U.S. at page* 224, 49 *S.Ct.* 310, 73 *L.Ed.* 669. The power of the receivership court to fix the time for distribution, therefore, may include the power, in the exercise of judicial discretion, to decline to postpone distribution awaiting disposition of litigation in another court over a contested claim. *Riehle v. Margolies, supra,* 279 *U.S. at page* 224, 49 *S.Ct.* 310, 73 *L.Ed.* 669. A court of equity, in fixing the time within which claims shall be filed for the purpose of participating in the estate of a corporation, will regard, on the one hand, the substantial right of all creditors to share in the debtor's property, and, on the other hand, the necessity for expeditious administration. Giving due consideration to both, the court must make rules which are practical, as well as equitable. *Pennsylvania Steel Co. v. New York City Ry. Co., supra,* 198 *F. at page* 738. Accordingly, a court of equity, in the exercise of a proper judicial discretion, can always fix a deadline for filing of claims, even though this results in eliminating as participants in the assets some person who might have been able to qualify to participate in the corporate assets if a more extended period of time for the filing of claims had been fixed by the court.

Neither *Section* 464 nor *Section* 2086 *of the Revised Code of* 1935, relied upon by the receivers, is inconsistent with the views which I have expressed. The former section is applicable only to a receivership of an insurance company which has resulted from an application of the Attorney General. Manifestly, this is not such a proceeding. *Section* 2086 merely authorizes the Court of Chancery to pass upon claims which are presented to it and "to determine the rights of the claimant, and to make such order or decree touching the same as shall be equitable and just; * * *."

The section does not purport to set up the standard by which the court shall allow or disallow a particular claim. The argument of the receivers that *Section* 2086 requires the court to investigate the merits of a claim which has been reduced to judgment, is unsupportable. If carried to its logical conclusion, it would require the court to try *de novo* any claim, even though based upon a judgment recovered against the corporation itself prior to receivership. A view which leads to such a result is demonstrably specious.

The receivers point out that in other states where ancillary receivers of International have been appointed, the courts have refused to allow claims of injured parties based upon judgment recovered against assureds after the appointment of receivers for International, and that in such other states claimants have been required to prove *de novo* the merits of their claims in the receivership proceeding. The adoption of a different rule by this court, say the receivers, would be deplorable.

Too much weight should not be attributed to the procedure followed in other states, as precedent in this. Many states have statutes which deal with the allowance of claims of injured parties against insolvent insurers. Some expressly provide that no judgment obtained against an assured after the receivership of the insurer, shall be considered evidence of the insurer's liability; others debar a default judgment against an assured, regardless of when obtained, from having any evidentiary effect to establish the liability of the insurer; others require the injured party to establish *de novo* his claim against the assured by the submission of evidence to the receivers. In the absence of a comparable statute in Delaware, I cannot perceive what bearing these statutory procedures can have upon the rule to be applied in this state in the allowance of claims.

Granted that, as a practical matter, uniformity of standard for the allowance of claims is to be desired between the various jurisdictions in which receivers have been ap-

pointed, it does not follow that such uniformity should be attained by this court disregarding what appears to me to be applicable principles of law. If uniformity of decision in the allowance of claims is to be achieved, Judge Beach of the Connecticut Supreme Court of Errors has suggested the following solution (30 *Yale Law Journal, pp.* 674, 680) :

> "If it be suggested that equity requires that all claims be liquidated by a uniform rule of decision, the answer is that the way to get that result, consistently with the rules of evidence and the Constitution, is by a statute summarily terminating, or authorizing the court of the receivership summarily to terminate, the corporate existence of the defendant. In the absence of such a statue the court has no power to prevent other courts from acquiring or exercising jurisdiction in personam over the defendant, or to deprive non-resident plaintiffs of their right to sue in the courts of their own domicil."

The receivers, however, contend that the statutory rule of New York and other states is merely declaratory of the general law and that, apart from statute, judgments recovered by injured parties against the assureds after the receivership of an insurer cannot be recognized as the basis for claims against assets in the hands of receivers. To support this statement, the receivers cited *People ex rel. Van Schaick v. Union Mutual Casualty Insurance Corporation,* 239 *App. Div.* 822, 264 *N.Y.S.* 935, in which the court affirmed an order of Justice Cotillo rejecting two claims based upon judgments recovered against assureds after receivers had been appointed for the insurer. It is noteworthy, however, that Justice Cotillo in rejecting the claims planted his decision squarely upon the ground that the appointment of the receivers for the insurer resulted in the dissolution of the company. Justice Cotillo said:

> "The third objection of the claimants must fall for the reason that at the time of obtaining the default judgment against the S. & B. Taxi Co., Inc., the insurance company in which the S. & B. Taxi Co., Inc. carried its insurance was no longer in existence. It had been legally declared dead by an order of this court." People ex rel. Van Schaick v. Union Mut. Casualty Ins. Co., February 2, 1933.[13]

---

[13] No opinion for publication.

It is asserted by the receivers that the appointment of a receiver for a corporation materially affects the remedies of its creditors. *Hannigan v. Italo Petroleum Corporation of America, supra.* This is, of course, true. The inability of a judgment creditor to execute upon assets in the hands of a receiver is a specific illustration of a curtailment of a creditor's remedy occasioned by receivership. But it does not follow from this, that a receivership court is justified in refusing to recognize a claim based upon a judgment recovered by an injured person against an assured after the receivership, if the judgment would have been conclusive proof of the insurer's liability, had the insurer remained solvent. In *Riehle v. Margolies, supra,* the court said 279 *U.S. at pages* 224, 225, 49 *S.Ct. at page* 313, 73 *L.Ed.* 523:

"* * * there is no reason why the *character of the proof* required in the receivership suit for any purpose should be different from that which would have been required had the judgment in the state court been rendered prior to the appointment of the receiver; or from that which would be required if an independent suit on the judgment were brought in the federal court. It would hardly be doubted that a final judgment, recovered in a state court prior to the commencement of the receivership suit, would establish conclusively the existence and amount of the claim against the debtor, if later a decree were entered in the federal court distributing the funds in the receiver's hands among its creditors. * * *"

It may be argued that the first sentence of the insolvency clause (*ante p.* 42, 48 *A.* 2d 534) creates a substantive liability from the insurer to the injured party which arises upon the occurrence of the injury, and that the necessity of recovering a judgment against the assured and having execution issued thereon and returned unsatisfied, is but a remedial condition which the receivership court in its discretion may ignore. The dividing line between matters of substance and those of procedure is at times obscure. *Worthen Co. v. Kavanaugh,* 1935, 295 *U.S.* 56, 60, 55 *S.Ct.* 555, 79 *L. Ed.* 1298, 97 *A.L.R.* 905. The principle is settled, however, that when a new liability is created, and a special remedy for its enforcement is established by the same statute,

the conditions of the remedy become conditions of the right itself. In other words, the procedural means specified in the statute for the enforcement of the right is an essential part of the right itself. *People v. Metropolitan Surety Co.,* (1914) 211 *N.Y.* 107, 105 *N.E.* 99, 101; *United States ex rel. Texas Portland Cement Co. v. McCord,* (1914) 233 *U.S.* 157, 162, 34 *S.Ct.* 550, 58 *L.Ed.* 893. No reason appears why the same principle should not apply when a new liability is created and a new remedy for its enforcement is established by provision of a contract.

As I view the matter, it is quite immaterial whether the requirement of the judgment and a *nulla bona* execution against the assured is viewed as substantive or procedural. Undoubtedly, the receivers are at liberty to allow a claim by an injured party even though it is not reduced to judgment against the assured, if the receivers after an investigation of the facts satisfy themselves that the assured is liable for the injury and is judgment-proof. A solvent insurer is always free to admit its liability to an injured party without requiring proof of a judgment against the assured and a return of *nulla bona* to an execution. No reason exists why receivers should not enjoy similar freedom of action, whatever circumstances warrant. It does not follow as a corollary to this, however, that a court is free to deny to a judgment the same effect which it would have used as the basis for an action against a solvent insurer.

The receivers express concern over the fact that ancillary jurisdictions, acting pursuant to the order of this court dated December 8, 1933 may certify to this court claims which have been allowed as a result of the application of legal principles at variance with those herein expressed. This circumstance, in my view, need be the occasion of no embarrassment to this court. Claims so certified—whether based upon sound or erroneous principles of law—will have to be recognized and accorded the same force and effect by this court as though the claims had actually been allowed by

it. No other alternative is possible if the terms of the order of December 8, 1933 are adhered to as, of course, they must be.

The receivers assert that many judgments were recovered in actions of which the receivers were given no notice as contemplated by the policies. I pass this contention since the record pertaining to the Freundlich claim contains no evidence with respect to it.

It is also said that the judgment Freundlich has presented was a default judgment. I find nothing in the record relating to his claim which establishes this fact.

I conclude, therefore, that if the assumption stated *ante p.* 42, 48 *A.* 2d 534, is accepted, the first exception should be overruled.

Exception 2.—The claimant has not proved the existence of an insolvency provision in the policy in question that would give her any right to bring an action against the insurer.

My opinion that the first exception should be overruled was based upon the assumption that the policy under which Freundlich sought to recover contained an insolvency clause giving an injured party a right to maintain an action against the insurer, upon recovering judgment against the insured and having execution returned thereon unsatisfied. The receivers contend that such an assumption is unwarranted.

I am inclined to agree with the receivers in this regard. Although the receivers have admitted, in effect, that International had issued a policy under which it was liable to Freundlich if proper claim was made—thereby inferentially admitting, as it seems to me, that the policy contained an insolvency clause of some kind—the particular terms of the clause were not conceded or proven. This omission is important because the cases which I have read indicate that the insolvency clauses are subject to considerable variation in their terms.

The special master overruled the objection of the receivers to his draft report, based upon the failure of claimant to prove the terms of the policy on which her claim was based. In so doing, the master stated that inasmuch as the policy was not issued to the claimant and she never had any right to its possession, to require claimant to prove the terms of the policy would place upon her "an almost impossible burden."

Furthermore, said the master, even though the terms of the Monticello policy were not proved, the statutes of the State of New York, where the policy was issued, require the policy to be construed as though an insolvency clause were included in it, regardless of whether this was or was not the fact. The New York statute referred to is *Section 109 of the Insurance law of New York of 1909, Consol. Laws, c. 28, as amended by Laws of 1917, Chapter 524, as amended by Laws of 1924, Chapter 639.* It provides:

"Standard provisions for liability policies. No policy of insurance against loss or damage resulting from accident to or injury suffered by an employee or other person and for which the person insured is liable, or, against loss or damage to property caused by animals or by any vehicle drawn, propelled or operated by any motive power, and for which loss or damage the person insured is liable, shall be issued or delivered in this state by any corporation or other insurer authorized to do business in this state, unless there shall be contained within such policy a provision that the insolvency or bankruptcy of the person insured shall not release the insurance carrier from the payment of damages for injury sustained or loss occasioned during the life of such policy, and stating that in case execution against the insured is returned unsatisfied in an action brought by the injured person, or his or her personal representative in case death results from the accident, because of such insolvency or bankruptcy, then an action may be maintained by the injured person, or his or her personal representative, against such corporation under the terms of the policy for the amount of the judgment in the said action not exceeding the amount of the policy. * * *

"A policy issued in violation of this section shall, nevertheless, be held valid but be deemed to include the provisions required by this section, and when any provision in such policy or rider is in

conflict with the provisions required to be contained by this section, the rights, duties and obligations of the insurer, the policy-holder and the injured person shall be governed by the provisions of this section."

It is to be observed that the requirement of *Section* 109 for the inclusion of an insolvency clause is limited to policies "issued or delivered" in the State of New York. The master states that the policy held by Monticello "was issued in New York." I find no adequate support for this statement in the record. It is true that the certificate of the Secretary of State of New York, included as a part of the final report of the special master, reveals the fact that Monticello was a New York corporation, and the proof of claim discloses that the accident which is the basis for the claim occurred in the State of New York.[14] Neither of these facts, however, in my opinion, warrant the conclusion that the policy was in fact issued in New York.

Certainly, if an action at law had been instituted by claimant against International, prior to receivership, the court would have required claimant to prove the terms of the policy sued upon; or, failing that, to establish that the policy had in fact been issued or delivered in New York. This latter proof would have been indispensable if plaintiff intended to rely upon the provisions of *Section* 109 *of the Insurance Law of New York* as a basis for recovery. The mere circumstance that the assured was a New York corporation and that the accident which gave rise to the claim occurred in New York, in my view, would not be accepted by a court in an action at law in lieu of direct proof that the policy sued upon was issued or delivered in New York. Normally a person who bases an action upon the terms of a contract is required to prove the contract itself. If this requirement is to be dispensed with and a statute of a foreign

---

[14] Records in the possession of the receivers indicate that the address of Monticello New York Reliable Coach Co. was in Brooklyn. These records, however, do not constitute a part of the record before the special master.

state is to be relied upon as a substitute for proving the contract, a court should require the claimant to prove by direct and positive evidence the existence of all facts required to render the statute applicable to his case.

The view of the master that claimant should be relieved from proving the provisions of the policy because the policy was not issued to claimant, is not sound. Frequently, third party beneficiaries under contracts, who have no possession of them, are required to prove the terms of the contracts in actions at law. Well-recognized methods exist for adducing this proof.

The record fails to reveal why Freundlich made no effort to establish the terms of the contract which is the basis for her claim, or that she could not have done so had she resorted to the means usually employed for the purpose. I, therefore, am unable to conclude, as did the master, that proof of the terms of the policy should be dispensed with. Proving the terms of the policy is no more of a hardship to claimant, than it is to any injured party who brings suit against a solvent insurer, based upon an insolvency clause contained in a liability policy.

In *State v. Surety Corporation of America*, (1932) 19 *Del. Ch.* 17, 25, 162 *A.* 852, 856, Chancellor Wolcott refused to allow a claim against a surety company for which a receiver had been appointed because the terms of the bond upon which the claim was predicated had not been proved. In disallowing the claim, Chancellor Wolcott said (19 *Del. Ch. p.* 25, 162 *A. p.* 856):

"That portion of the claim which asserts a liability under surety bonds because of defalcation of employees must be disallowed and the exceptions thereto sustained. The bonds are not produced and no secondary evidence of their terms has been offered. All that appears is that the claimant paid to the defendant some premiums for some sort of indemnity insurance. Whether the claimed losses are of a nature to fall within the terms of the bonds it is impossible to say, in the absence of some sort of proof showing the terms of the contract. * * *"

One further question remains. *Court of Chancery Rule* 128 provides:

"No exceptions may be taken to the draft report which could have been, but were not, taken before the filing thereof."

The meaning of this provision is not too clear. It seems to me, however, that it was intended to foreclose an exceptant from raising objections to a draft report, when those objections had not been made either in the exceptions filed to the proof of claim or at the time of the hearing. In the instant case, the insufficiency of proof of the policy terms could not have been made prior to the hearing on the exceptions filed by the receivers to the proof of claim. The receivers, however, were in a position at the hearing to point out that claimant's proof was insufficient as to the terms of the policy. This the receivers did not do. Instead, they confined their objection to the allowance of the claim on one ground only, i. e., the judgment was obtained after receivership. Under these circumstances, it can be argued with force that *Rule* 128 forecloses the receivers from objecting to the allowance of the claim, either by way of objections to the draft report or exceptions to the final report, on the particular ground under consideration.

Regardless, however, of whether the receivers are barred from now contending that the proof of the terms of the policy was insufficient, it seems to me that the court *sua sponte* is free to raise the question, and indeed is duty-bound to do so, in any case where the distribution of assets of an insolvent corporation is involved. I say this for the reason that each claim that is allowed cuts down correspondingly the dividend which is to be paid to other persons whose claims are allowed. As a consequence, the question of the propriety of the allowance of a claim is not a matter which alone concerns claimant and the receivers. It is a matter of vital interest to third parties, whose interest the court is obligated to protect. It seems to me, therefore, that the court can, with all propriety, consider the question of

whether the terms of the policy have been adequately proven, and indeed should do so even though the receivers, by failing to object at the hearing, have waived their right to raise the question.

Claimant has failed to meet the burden of proof imposed upon her by *Rule* 124, and Exception 2 should be allowed.

Exception 3.—The claimant has not proved that an execution has been issued and returned unsatisfied because of the insolvency or bankruptcy of the assured.

As stated, *Section* 109 of the *Insurance Law of New York,* prohibits the issuance or delivery of a casualty policy in New York unless the policy states that

"* * * in case execution against the insured is returned unsatisfied in an action brought by the injured person, or his or her personal representative in case death results from the accident, because of such insolvency or bankruptcy, then an action may be maintained by the injured person, or his or her personal representative, against such corporation under the terms of the policy for the amount of the judgment in the said action not exceeding the amount of the policy."

The next succeeding paragraph of *Section* 109 provides that even though a policy be issued without a provision which that section requires, nevertheless, the policy shall be deemed to include such a provision.

The master has stated that he has not been advised whether execution was ever issued and returned unsatisfied on the judgment which Freundlich obtained against Monticello. The receivers, therefore, contend that claimant can obtain no benefit under *Section* 109 for the reason that she has failed to prove that an execution has issued and been returned unsatisfied on her judgment.

In disposing of a similar objection to the draft report, the master stated that the objection is "new and highly technical"; that it is not difficult to have an execution issued

and returned *nulla bona;* that it would be "a strange thing" if claimant were pursuing International, an insolvent corporation, if, in fact, Monticello were solvent; that Monticello was dissolved on December 16, 1935 apparently for nonpayment of franchise taxes; and that no useful purpose would be served in reopening the hearing to hear evidence on a formal *nulla bona* return particularly as the receivers made no point of the matter until after the original hearing.

Again, I am constrained to differ with the view expressed by the master. As I view the matter, proof of an unsatisfied execution upon a judgment against an assured is a condition of the liability of the insurer. *Section* 109 of the *New York Insurance Law* provides that if execution is returned unsatisfied upon a judgment against the insured *"then* an action may be maintained by the injured person." Perhaps it may be argued that the proving of a claim in a receivership is not an "action" within the meaning of *Section* 109. Nevertheless, it seems to me, that since the liability of an insurer to an injured party, and the remedy for its enforcement, have both been created by the same statute, the remedy is part of the right itself, *People v. Metropolitan Surety Co.,* (1914) 211 *N.Y.* 107, 105 *N.E.* 99, 101; *United States ex rel. Texas Portland Cement Co. v. McCord,* (1914) 233 *U.S.* 157, 162, 34 *S.Ct.* 550, 58 *L.Ed.* 893, regardless of whether the remedy is asserted in an action against a solvent insurer or by way of a claim filed with receivers of an insolvent insurer.

Proof of an unsatisfied execution, therefore, seems to me to be indispensable to the allowance of the claim, even though no objection on this ground was voiced by the receivers at the hearing.

In my opinion, the third exception should be sustained.

-Exception 4.—An assumption by the special master of the existence of specific provisions in the policy of the doing of any acts required thereby which are not sustained by

facts in the record cannot discharge the burden of proof required of the claimant by *Rule* 124 of the *Court of Chancery.*

My views with respect to this exception are stated in the discussion of exceptions 2 and 4.

Exception 5.—Neither International Re-Insurance Corporation nor its receivers have ever had an opportunity to try the question of liability in this case on its merits.

My views with respect to this exception are covered by my discussion of exception 1.

Exception 6.—That the exceptions heretofore filed to this claim should be sustained.

This exception is general in character and requires no comment in addition to the views which I have previously expressed.

Claims Nos. 15,270 to 15,275—Raymond Pedrick, et al.

The statement in the draft report of the master with respect to the above six claims appears accurate and the details thereof need not be repeated. Suffice is it to say that each of the claims is based upon a judgment recovered against David Haines, an assured of International, subsequent to the appointment of receivers for International. The judgments resulted from one accident antedating the receivership. Writs of execution were issued upon the judgments and returned *nulla bona*. After proofs of claim had been filed in the receivership, $1,000.00 was paid to the claimants and thereupon each of the claimants satisfied his judgment against Haines.

Exception No. 2 filed by the receivers to the draft report of the master was grounded upon the fact that claimants had not proved the existence of an insolvency provision in the policy under which Haines was insured. In overruling this exception, the master called attention to the fact that New Jersey had a statute substantially identical to

*Section* 109 of the *Insurance Law of New York,* quoted *ante p.* 66, 48, *A. 2d* 546. As a consequence, the master concluded that, regardless of the actual terms of the policy issued to Haines, the policy, by operation of law, must be construed as though, in fact, it contained an insolvency clause authorizing an action to be maintained by an injured person against an insurer, if the injured party recovered a judgment against the insured and execution thereon was returned unsatisfied. Inasmuch as the receivers filed no exception to the master's final report, based upon the failure of the claimants to prove the existence of an insolvency clause, it must be assumed that the receivers were satisfied that the New Jersey statute was applicable to the policy issued to Haines.

My views with respect to the exceptions which the receivers filed to the final report of the master, are as follows:

Exception 1.—The claims are based upon judgments obtained against David Haines subsequent to the date of the appointment of receivers for International Re-Insurance Corporation, which judgments cannot be used as bases for claims against the assets in the hands of the receivers.

This exception should be overruled for the reasons stated (*supra, pp.* 42-66, 48 *A. 2d* 534-546).

Exception 2.—Any liability of or claim against David Haines on behalf of any of these claimants was merged in the judgments obtained against David Haines and was therefore extinguished upon the satisfaction of those judgments.

The master held that the acceptance by claimants of $1,000.00 and the satisfaction in full of the judgments which the claimants recovered against Haines, did not justify the receivers in disallowing the claims in toto. Since the maximum liability of International under the Haines policy was $10,000.00 (slightly less than the total amount of the judgments recovered) and the claimants had been paid only

$1,000.00, the master held that the proofs of claim should be allowed in the aggregate amount of $9,000.00. Any other result, the master said, would be "unconscionable."

I am unable to agree with the master's views in this regard. The law is settled that an insolvency clause in a policy (or a statute creating similar rights on behalf of an injured party against an insurer) merely gives to an injured claimant a cause of action against an insurer for the same relief that a solvent insured would have, if he had paid a judgment against himself, and, thereafter, sought indemnity and reimbursement from the insurer. While the cause of action of the injured party is no less than that of the insured, it is likewise no greater. *Coleman v. New Amsterdam Casualty Co.*, 1928, 247 *N.Y.* 271, 160 *N.E.* 367, 369, 72 *A.L.R.* 1443; *Specht v. Bankers Indemnity Ins. Co.*, (2 *Cir.*, 1944) 140 *F.2d* 30. Stated otherwise, the right of an injured party to recover against an insurer is co-extensive with, but not exceeding that which an insured would have if he had paid a judgment and thereafter sued the insurer for indemnity under the policy. *Jones v. Zurich General Accident & Liability Ins. Co. Ltd.*, (2 *Cir.* 1941) 121 *F.2d* 761. As a consequence, any defense available to an insurer against an insured who has paid a judgment and is seeking reimbursement, is likewise available to an insurer who is sued by an injured party. *Roth v. National Automobile Mut. Casualty Co.*, (1922) 202 *App. Div.* 667, 195 *N.Y.S.* 865, 866, 867; *Fox v. Employers' Liability Assur. Corporation, Limited, of London, England*, (1935) 243 *App. Div.* 325, 276 *N.Y.S.* 917, 923, affirmed 267, *N.Y.* 609, 196 *N.E.* 604. The last two decisions dealt specifically with *Section* 109 of the *Insurance Law of New York*.

Obviously, an insured who succeeded in compromising a $10,000.00 judgment against himself for $1,000.00, would be limited to recover $1,000.00 from the insurer. Since the rights of an injured party are co-extensive with, but no greater than that of the insured, and the claimants in the

instant action have already received $1,000.00 from the insured, they are entitled to recover nothing more.

Another approach to the problem leads to the same conclusion. Insofar as the claim of an injured person against an insurer is concerned, the claim is analogous to that of a creditor against a surety. *Transylvania Casualty Ins. Co. v. City of Atlanta for use of Davis*, 1926, 35 *Ga. App.* 681, 134 *S.E.* 632, 633; *Coleman v. New Amsterdam Casualty Co.*, (1928) 247 *N.Y.* 271, 160 *N.E.* 367, 369, 72 *A.L.R.* 1443.

When a creditor releases his principal from liability, a surety is similarly released, unless the surety agrees that his liability shall survive, or unless, in the release itself, the creditor reserves his right to proceed against the surety. *Restatement of the Law, Security*, § 122; 50 *Am.Jur.* § 126. Since the claimants have released Haines from liability, without reserving their rights against International, and there is no evidence that International has agreed that its liability shall continue, it follows that the claimants are entitled to recover nothing against International. In my opinion, therefore, the second exception to the claims should be sustained.

Exception 3.—Neither International Re-Insurance Corporation nor its receivers have ever had an opportunity to try the question of liability in this case on its merits.

This exception should be overruled for the reasons stated (*ante pp.* 42-66, 48 *A.* 2d 534-546).

Exception 4.—That the exceptions heretofore filed to these claims should be sustained.

This exception is general in character and requires no comment in addition to the views previously expressed.

Claim No. 8,546—Albert Marlatt.

The proof of claim discloses that claimant was injured in an accident which occurred on August 19, 1931 in Ohio;

that on September 14, 1933, subsequent to the appointment of receivers for International, plaintiff recovered a default judgment in the amount of $5,000.00 against Marie Charmeley, an assured of International, in the Court of Common Pleas of Ohio; and that the judgment was unsatisfied when the claim was filed.

The receivers excepted to the proof of claim and alleged:

"That said claimant has no claim against International Re-Insurance Corporation, its receivers or its assets, and was so advised by letter dated June 23, 1943."

The letter dated June 23, 1943, referred to in receivers' exceptions, states:

"The proof of claim that you have forwarded to us discloses that the judgment was taken by default on September 14th, 1933. International Re-Insurance Corporation entered receivership April 19th, 1933 and under the controlling decisions and orders of the Chancery Court of the State of Delaware it is the position of the Receivers that they are not bound by judgments taken after receivership, as the basis of a claim against assets in their hands.

"A review of the facts contained in our files would indicate that the only method open by which an allowance might be made on this claim is by a formal hearing and the presentation of evidence. The Receivers accordingly will take exception to this claim, of which notice will be sent to the claimant in due course."

At the hearing it was admitted that the judgment debtor was an assured of International, and that the policy contained "the usual provisions as to insolvency."

The receivers stated, however, that they did not have a copy of the policy in question; the assured had it. It was conceded by claimant that he had filed a proof of claim in the Ohio ancillary proceeding of International, that his claim had been there allowed in the amount of $5,000, and that claimant had already received a distribution from the Ohio receivers in the amount of 10¾%.

At the hearing the receivers objected to the proof of

claim because it was based upon a default judgment obtained against the assured after receivership of the insurer, and insisted that the facts establishing the assured's liability should be adduced *de novo* in support of the claim.

The master recommended that the claim be allowed in the amount of $5,000, with the proviso that no dividends be paid upon the claim until all other general creditors of International have received a dividend of 10¾%.

No exception was filed by claimant. The receivers, however, filed six exceptions which were substantially identical to those filed to the allowance of the Gussie Freundlich claim.

Exception 1.—Claim based upon judgment against assured subsequent to appointment of receivers for insurer cannot be used as the basis for a claim against the assets in the hands of the receivers.

At the hearing the receivers conceded that the policy upon which claimant sought to recover contained "the usual provisions as to insolvency." I assume, therefore, that the policy held by Marie Charmeley contained provisions of some kind which would enable an injured party, under circumstances not specifically disclosed, to recover against the insurer upon the insolvency of the insured.

Although the terms of the policy in question are not revealed, I shall assume, for purposes of the first exception, that it contained the insolvency clause set forth at *ante p.* 42, 48 *A. 2d* 534.

Based upon this assumption, the reasons stated at *ante pp.* 42-66, 48 *A. 2d* 534-546, would require the first exception to be overruled, were it not for the fact that the claim is based upon a default judgment. This circumstance distinguishes the situation of Marlatt from that of Freundlich.[15]

---

[15] The receivers contend that the Freundlich claim is based upon a default judgment. As previously stated, I find nothing in the record before the master to support the receivers' contention.

What, then, is the effect of the assured's failure to defend the action against her? Although the record does not disclose whether the policy issued to Marie Charmeley contained an undertaking by the insurance company to defend actions against the assured, I conclude that the policy did contain such a provision. I base this conclusion upon the allegations of the petition filed by the receivers on April 28, 1933, for leave not to defend some 4,000 suits then pending against assureds of International. In Paragraph (4) of that petition, the receivers allege:

> "That prior to the appointment of your petitioners as aforesaid, International Re-Insurance Corporation had employed counsel and had undertaken the defense of said 4,000 suits in accordance with its obligation to defend contained in the respective policies."

It may be argued that, even though an insurance company breaks its contract to defend an action against an insured, nevertheless, the latter must itself defend the action in order to mitigate the ultimate loss of the insurer, and that if the insured permits a default judgment to be recovered against it, this should relieve the insurer from any liability under the policy. Indeed, this was the view of the Court of Appeals of Missouri (one Judge dissenting) in *Carthage Stone Co. v. Travelers' Ins. Co.*, (1915) 186 *Mo. App.* 318, 172 *S.W.* 458. This decision, however, was reversed by the Supreme Court of Missouri (again with one Judge dissenting) in *Carthage Stone Co. v. Travelers' Ins. Co.*, (1918) 274 *Mo.* 537, 203 *S.W.* 822. A majority of the court adopted the opinion of the dissenting Judge in the Court of Appeals holding that the failure of the insured to defend an action did not absolve the insurance company from its liability to reimburse the assured after the latter had paid the default judgment, since the insurance company itself had defaulted in its policy obligation to defend the action. Other decisions to the same effect are: *Tighe v. Maryland Casualty Co.*, (1914) 218 *Mass.* 463, 106 *N.E.* 135; *American Surety Co. v. Sutherland*, (*D.C.N.D.Ga.* 1940) 35 *F. Supp.* 353; and *Indemnity Ins. Co. of North America v.*

*Lee,* 1930, 232 *Ky.* 556, 24 *S.W.2d* 278. I consider these decisions controlling and that I should be governed by them.[16]

The fact that statutes in New York, Massachusetts, California, Ohio, Indiana and Illinois provide that a default judgment against an assured shall not be accepted as the basis of a claim against an insured, suggests that if the rule laid down in the foregoing cases is to be altered, it should be by the legislature and not by the court.

I should point out that nothing in the record suggests that the default judgment now under consideration was obtained fraudulently or as a result of collusion between the injured party and the assured. My view that the default judgment should be recognized is based upon the premise (fully justified in the absence of proof to the contrary) that the judgment was neither fraudulent nor collusive.

The first exception, therefore, should be overruled.

Exception 2.—Claimant has not proved the existence of an insolvency provision which would give him the right to recover. I am inclined to believe that this exception should be sustained. Although the receivers have admitted that the policy under consideration contained the "usual provisions as to insolvency," the particular terms of the insolvency clause were not conceded or approved. This omission is important because the cases which I have read indicate that the insolvency clauses are subject to considerable variation in their terms.

The special master overruled the objection of the receivers to his draft report, based upon the failure of claimant to prove the terms of the policy on which her claims were based. In doing so, the master relied upon the concession of the receivers that the policy contained the "usual provisions as to insolvency" and upon *Section* 9510-3 and

---

[16] Dictum at variance with the cited cases may be found in *Wilson v. London Guarantee & Accident Co., Ltd.,* (1918) 37 *Cal. App.* 245, 173 *P.* 1006, 1007; and *Buckner v. Buckner,* (1932) 207 *Wis.* 303, 241 *N.W.* 342, 345.

9510-4 of the *Gen. Code of Ohio*. The master stated that the law of Ohio governed the matter.

While the Ohio statute upon which the master relies does not indicate that the statute is intended to be limited to policies issued in Ohio, it would seem clear that unless the policy was issued in Ohio, the statute could have no conceivable bearing upon a claim filed in Delaware against an insurer. The difficulty, therefore, which I have with the master's conclusion, is that it presupposes Ohio law is applicable. I find no adequate evidence in the record to support this conclusion. The circumstance that both claimant and the assured resided in Ohio does not satisfy the requirement of proof which is needed to make Ohio law applicable.

The second exception, therefore, should be sustained.

In view of the fact that for the several reasons heretofore stated, the claim of Albert Marlatt should be disallowed, I see no necessity for giving consideration to the further exceptions which the receivers have filed.

I should say, however, that if the court concludes to allow the claim, then it seems to me that the claimant should be entitled to participate in dividends only to the limited extent and under the circumstances which the master has recommended. My reasons for limiting claimant's right to dividends are precisely those stated by the master. Furthermore, no exception was filed by claimant to the master's final report.

### Claim No. 15,697—Arthur A. Paradis.

This claim should be allowed in the amount recommended by the master, for the reasons stated by the master. Accordingly, all of the receivers' exceptions to the final report should be overruled.

The record contains no evidence whether the policy, upon which claimant bases his rights, contained an insolvency clause. Claim No. 9,929 filed by claimant discloses

that the insured lived in Massachusetts. In addition, it reveals that "the insuring agents" which issued the policy were residents of Massachusetts. The master quite properly concluded that the Massachusetts statutes, set out in full in the final report, were applicable.

It is to be noted that *Section* 113 *of Chapter* 175 of the *Annotated Laws of Massachusetts* authorizes an injured person who has recovered a final judgment against an insured: "to have the insurance money applied to the satisfaction of the judgment *as provided in the tenth clause of section three of chapter two hundred and fourteen."*

*Section* 3, *Clause* 10 of *Chapter* 214 empowers the Supreme Judicial and Superior Courts of Massachusetts to hear suits in equity brought by injured persons to reach and apply the obligation of an insurance company to an assured against whom judgment has been recovered, if the judgment is not satisfied within thirty days.

It may be argued, therefore, that *Section* 113 limits an injured person to suing an insurer only in Massachusetts. The case of *Farrell v. Employers' Liability Assur. Corporation, Limited,* (1933) 54 *R.I.* 18, 168 *A.* 911, however, holds that *Section* 113 *of Chapter* 175 and *Clause* 10 of *Section* 3 *of Chapter* 214 *of the Laws of Massachusetts,* authorize an injured party who has recovered judgment against an insured to proceed in Rhode Island to have the insurance money applied in satisfaction of the judgment. Earlier in *Lundblad v. New Amsterdam Casualty Co.,* (1928) 265 *Mass.* 158, 163 *N.E.* 874, it was held that a statute of Rhode Island, comparable to the Massachusetts statutes under consideration, conferred substantive, and not merely procedural, rights upon an injured party. Accordingly, the master seems to have been entirely justified in adopting the Massachusetts statutes as a basis for allowing the claim filed in Delaware.

### Claim No. 16,319—Manson Hunt

The exceptions of the receivers to the recommendation of the master that the claim be allowed, should be sustained. The record discloses that the judgment of the claimant against the assured has been satisfied. The legal effect of this fact was considered and disposed of in connection with the claim of Raymond Pedrick, *ante pp.* 72 to 75, 48 *A.* 2d 549-550. The reasons assigned for the disallowance of the Pedrick claim require the disallowance of the Hunt claim.

### Claim No. 7,390—Jean Marie Lynch, as Administratrix *ad Prosequendum* of the Estate of Joseph A. Lynch, Deceased.

The exceptions of the receivers to this claim need not be considered inasmuch as an order was entered by the court on July 11, 1945, allowing the claim in the amount of $9,000.00.

### Claim No. 15,660—Rebecca Goodman.

The proof of claim reveals that claimant recovered a judgment in the Court of Common Pleas of Ohio against the Shankmans in the amount of $3,000.00, for an injury sustained by claimant while examining property in Cleveland, Ohio, owned by the Shankmans. At the time, the Shankmans were insured under a policy known as a "Owners, Landlords and Tenants Policy" which indemnified them against loss from liability for injuries occurring on the premises in question. Claimant's injury which resulted in the judgment occurred prior to the receivership of International, but the judgment was recovered thereafter. Since the judgment was unsatisfied, the master recommended the allowance of the claim. To this recommendation, the receivers excepted.

Exception 1—The claim is based upon a judgment obtained after the appointment of receivers and, as a consequence, the judgment cannot be used as a basis for the claim.

Assuming an "insolvency clause" in the Shankmans' policy, or an applicable statute under which claimant's judgment against the Shankmans could have been made the basis of a valid claim against International, if the latter had been solvent, the circumstance that claimant's judgment against the Shankmans was not recovered until after the receivership of International, does not, in and of itself, preclude the judgment serving as a basis for the claim. The reasons for my view have already been stated in connection with the Freundlich claim. The first exception, therefore, should be overruled.

Exception 2—Claimant has not proved the existence of an insolvency provision in the policy.

The terms of the policy were not proven. It is a fact, however, that the policy insured against loss resulting from accidents occurring on real estate located in Ohio. This circumstance, in my opinion, justifies the view that the policy, under which the instant claim is asserted, was issued in Ohio.

*Section* 9510-4 of the *General Code of the State of Ohio* is quoted in the exceptions of claimant to the draft report of the special master.[17] That section provides:

"*9510-4. When judgment creditor entitled to have insurance money applied to judgment.*—

"Upon the recovery of a final judgment against any firm, person or corporation by any person, including administrators and executors, for loss or damage on account of bodily injury or death, if the defendant in such action was insured against loss or damage at the time when the right of action arose, the judgment creditor shall be entitled to have the insurance money provided for in the contract of insurance between the insurance company and the defendant applied to the satisfaction of the judgment, and if the judgment is not satisfied within thirty days after the date when it is rendered, the judgment creditor may proceed in a legal action against the defendant and the insurance company to reach and apply the insurance money to the satisfaction of the judgment." (108 *v. Pt.* 1, 386, *Sec.* 2)

---

[17] These exceptions are appended to the final report of the Special Master, Duane.

Since the policy in question was issued in Ohio, the above provision of the Ohio statute is applicable to it. The question arises, therefore, whether the right conferred upon the judgment creditor by *Section* 9510-4 is a substantive right which will enable the judgment creditor to proceed against an insurer outside of Ohio, or whether *Section* 9510-4 provides for a remedy which can be asserted solely in Ohio. The language of the section suggests the latter construction. But so does the language of *Section* 113 of *Chapter* 175 of the *Laws of Massachusetts,* referred to *ante* *p.* 81, 48 *A. 2d* 553. Nevertheless, as I have previously pointed out (*ante p.* 81, 48 *A.* 2d 554), the Massachusetts law has been construed as authorizing a judgment creditor of an assured to obtain relief against an insurer outside of the State of Massachusetts. In the absence of an Ohio decision to the contrary (and I find none), I believe that *Section* 9510-4 of the *General Code of Ohio* should be similarly construed.

The second exception of the receivers is, therefore, overruled.

Exception 3—Claimant has not proved that an execution has issued and been returned unsatisfied.

The Ohio statute does not require the issuance of an execution as a condition to the right of an injured party to recover against an insurer. An unpaid judgment alone suffices. Since there is no dispute about the fact that the judgment of claimant against the Shankmans is unpaid, the third exception of the receivers must be overruled.

In view of my comments with respect to exceptions Nos. 1, 2 and 3, exceptions Nos. 4, 5 and 6 must also be overruled.

Claim No. 4,977—Levi Ginsberg and Jacklin Le Seuer.

The exception of the receivers to the master's recommendation that the claim be allowed is based upon the fact that the judgment obtained by Le Seuer against the assured

was satisfied of record when Le Seuer was paid a small amount by the assured. The satisfaction of the judgment operated to discharge International from liability, for the reasons stated in connection with the claim of Pedrick, et al., (*ante pp.* 72-75, 48 *A.* 2*d* 550-551).

The only factual distinction worth noting between the instant claim and that of Pedrick, et al., is the circumstance that Ginsberg, one of the two claimants, is asserting an attorney's lien on amounts due to Le Seuer, the judgment creditor. Obviously, if the satisfaction of the judgment by Le Seuer disentitles him from recovering against International, Ginsberg is similarly barred.

The exceptions of the receivers should be sustained.

### Claim No. 14,152—Emily Webster

This claim is substantially like the claim of Rebecca Goodman. For the reasons stated by me in connection with that claim, exceptions 1, 2, 3, 4, 6 and 7 should be overruled.

Exception 5, however, alleges that no properly proven facts in the record establish that the premises upon which claimant was injured were covered by the policy upon which claimant bases her right to relief. I agree with the receivers. For this reason exception 5 should be sustained.

The foregoing expresses my views of the disposition which should be made of the various exceptions which the receivers have filed to the final report of the special master. It may not be amiss, however, for me to make certain general observations which occur to me. Obviously, the court desires that all persons having legitimate claims against the receivership estate should have their claims allowed, if this can be done without unduly prolonging the winding up of the receivership. As a consequence, I would suggest that consideration be given to adopting the following course of action, to the end that persons having *bona fide* claims may not be cut off from participating in the receivership estate:

(1)   A conference be arranged between the Chancellor and the receivers, at which an effort will be made to have the receivers admit whether the various policies upon which the claims are based contain insolvency clauses, and if so, the terms thereof, if such information can be obtained by the receivers from available sources.

(2)   If the receivers cannot ascertain, with reasonable certainty, the terms of the insolvency clause contained in any particular policies, an effort should be made to have the receivers stipulate that the laws of specified states are applicable to the policies.   In substantially all cases, I believe, a concession by the receivers that a given policy was issued in a particular state would render the law of that state applicable.   With this information, it would be possible to ascertain whether the state in question had adopted a statute embodying an applicable insolvency provision.

(3)   If the receivers are unable to ascertain whether the policies upon which any claims are based contained insolvency clauses and their terms, and are unable to specify the laws of what states are applicable to such policies, or if the receivers are able to stipulate with respect to such matters, but it should appear that other facts have not been proven which are essential to the allowance of the claims (as, for instance, the issuance and return of unsatisfied executions), then the claims based upon those policies could be re-referred to the master for the purpose of advising the claimants of the specific facts which they would be required to prove as a condition to having their claims allowed.   A relatively short time could be fixed for this purpose.   Claimants failing to prove the specific facts about which they have been notified, would have their claims disallowed.

I recommend the above course of procedure, upon the assumption that its adoption will not result in a hardship to claimants whose claims have been allowed disproportionate to the possible benefits which may accrue to the claimants for whom the hearings are reopened.   Without more

detailed information concerning the administration of the receivership estate, however, it seems to me that the advantages accruing from following the outlined procedure would far outweigh any hardship resulting from the additional delay which it will occasion.

Respectfully submitted,

Edwin D. Steel, Jr.

HARRINGTON, Chancellor. The report of Edwin D. Steel, Jr., special master, is hereby confirmed.